B. L. CRINER AND H. G. SIEVER, *Plaintiffs in Error*, v. THE STATE OF FLORIDA, *Defendant in Error*.

En Banc.

Opinion Filed August 3, 1926.

1. An information which attempts to charge a criminal offense, but which alleges facts that, if true, would constitute no offense against the law, is so fatally defective that it will not support a verdict of conviction, and judgment upon which such verdict should be arrested on proper motion.

2. Appellate courts are not favorably inclined to motions in arrest of judgment in criminal cases in which no motion to quash was made, but if the allegations of fact contained in the indictment or information make it manifest that no criminal offense has been committed, a motion in arrest of judgment should be granted, even though there was no motion to quash.

3. In negotiations looking to the sale of property, a statement by the vendor that the property is worth a certain amount, is, in the absence of any fiduciary relation between the parties, merely an expression of opinion, and cannot be made the basis of a prosecution for false pretense.

4. An information charging two defendants jointly with having represented that one of them was the owner of a certain tract of land, and with having thereby induced another person to purchase a mortgage upon the said land executed by the alleged owner to the other defendant as mortgagee, followed by an allegation that he did not in fact own the land, "but his title thereto was defective and unmarketable," must be construed as meaning that the alleged owner did in fact have some kind of title to the land; and a mere representation that he owned the land, in the absence of any false representation that his title was unclouded by other claims of ownership, is a matter of opinion concerning a subject upon which men might honestly entertain different views, and such bare claim of ownership does not amount to a false pretense, even though the claimant's title may afterward turn out to be inferior to some other title.

A Writ of Error to the Criminal Court of Record for Orange County; W. L. Tilden, Judge.

Judgment reversed.

*H. S. Phillips, Whitaker Bros.,* and *Durrance & Lemire,* for Plaintiff in Error.

*J. B. Johnson,* Attorney General, and *H. E. Carter,* Assistant, for the State.

SIMMONS, Circuit Judge.—On the 11th day of July, 1925, the County Solicitor of Orange County, Florida, filed an information against the plaintiffs in error in the following words and figures:

"IN THE CRIMINAL COURT OF RECORD of the County of Orange and State of Florida, at the adjourned May Term. in the year of our Lord one thousand nine hundred and twenty-five.

IN THE NAME AND BY THE AUTHORITY OF THE STATE OF FLORIDA:

W. M. Murphy, County Solicitor for the County of Orange, prosecuting for the State of Florida, in the said County, under oath, information makes that B. L. Criner and H. G. Siever, late of the County of Orange and State of Florida, on the 28th day of June, in the year of our Lord one thousand nine hundred and twenty-four in the county and State aforesaid, did then and there unlawfully, feloniously and designedly by false pretense and with intent to defraud one Belle Arbuthnot obtain from the said Belle Arbuthnot a certain warranty deed of conveyance conveying to the said B. L. Criner certain real estate in the City of Orlando, County of Orange and State of Florida, described as follows, to-wit: Lot number five of Boone Revision according to plat thereof recorded in Plat Book "D" page 134 Orange County records, the said property then and there being of value of $9000.00, the property of the said Belle Arbuthnot; that is to say that on the said date and in the said county and state the said B. L. Criner then and there went to the said Belle Arbuthnot and offered to assign to her a certain mortgage and the notes secured thereby, the said mortgage and notes bearing

date the 8th day of February, A. D. 1924, the said mortgage and notes being executed by Maud L. Siever and H. G. Siever, her husband, to B. L. Criner, the said mortgage being on the following described land in the County of Charlton and State of Georgia, to-wit: Land Lots Twenty-five (25) and Thirty-six (36) in the Tenth Land District, and Third Section thereof Charlton County, Georgia, said lots containing four hundred ninety (490) acres each, according to the State survey; also Lot No. One Hundred Fifty-nine (159) in the First Land District of Charlton County, Georgia, less twenty (20) acres in the Northeast corner of said lot owned by one Crews, leaving four hundred and seventy (470) acres; which mortgage was executed for the purpose of securing four certain promissory notes all dated February 8, 1924, one of said notes being for $3000.00 due on or before six months after its date, one note being for $3000.00 due on or before one year after its date, one note for $4000.00 due on or before two years after its date and one note being for $4000.00 due on or before three years after its date, all of said notes being payable at the bank of Osceola County, Kissimmee, Florida, signed by Maud L. Siever and H. G. Siever and endorsed by B. L. Criner; for a deed of conveyance to B. L. Criner of the property first above described; that in order to induce the said Belle Arbuthnot to sell and convey the property first above described to the said B. L. Criner, the said B. L. Criner did then take the said Belle Arbuthnot to Kissimmee, Osceola County, Florida, and the said B. L. Criner and the said H. G. Siever in the County of Osceola and State of Florida did then and there represent and pretend to the said Belle Arbuthnot that the said H. G. Siever was the owner of the land in Georgia described in said mortgage and that the land in Georgia described in said Mortgage was then of great value, to-wit: of the value of $35,000.00;

that the said Belle Arbuthnot believed said representations and pretenses to be true and relied upon same by reason of said representations and pretenses did thereafter on June 28, 1924, in the County of Orange and State of Florida sell and convey to the said B. L. Criner the land first above described by warranty deed dated June 28, 1924, which warranty deed was duly executed and acknowledged and filed for record in the office of the Clerk of the Circuit Court for Orange County, Florida, on June 30, 1924, and recorded in Deed Book 254 page 120 in the office of the Clerk of the Circuit Court for Orange County, Florida; and she the said Belle Arbuthnot did in the County of Orange and State of Florida on the 28th day of June, 1924, take in payment for said deed of conveyance an assignment of the mortgage and notes above described, which assignment was executed by the said B. L. Criner, that the said Belle Arbuthnot did in the County of Orange and State of Florida, on the 28th day of June, 1924, take and receive said mortgage and notes relying on and believing the pretenses aforesaid and believing that the said H. G. Siever was the owner of the land in Georgia, described in the said mortgage, that the said land was of great value, to-wit: of the value of $35,000.00, that in truth and in fact the said H. G. Siever did not own the land described in said mortgage when he and the said B. L. Criner made the false pretenses and representations aforesaid but his title was defective and unmarketable, and the said land was not then of the value of $35,000.00 but was of less than the value of $3,000.00; that the said B. L. Criner and H. G. Siever when making the false representations and pretenses aforesaid knew the same were false when they so made them, that the said false representations and pretenses were false when made and the said B. L. Criner and H. G. Siever knowing same to be false did unlawfully,

feloniously, knowingly, designedly, wilfully and intentionally make such false representations and pretenses as aforesaid with intent then and there to defraud the said Belle Arbuthnot.

"And your informant aforesaid prosecuting for the State of Florida in the County of Orange, under oath, further information makes that B. L. Criner and H. G. Siever, late of the County of Orange and State of Florida, on the 28th day of June, A. D. 1924, in the County of Osceola and State of Florida, did unlawfully and feloniously agree, conspire, combine and confederate to obtain from one Belle Arbuthnot in the County of Orange and State of Florida certain real estate in the County of Orange and State of Florida hereinafter particularly described, the property of the said Belle Arbuthnot and of the value of $9,000.00, unlawfully, feloniously and designedly by false pretenses and with intent to defraud her, the said Belle Arbuthnot, and the said B. L. Criner and H. G. Siever afterwards, to-wit: on the 28th day of June, 1924, in pursuance and according to the said agreement, conspiracy, combination and confederacy had as aforesaid did in the County of Orange and State of Florida unlawfully, feloniously and designedly by a false pretense and with intent to defraud one Belle Arbuthnot obtain from the said Belle Arbuthnot a certain Warranty deed of conveyance conveying to the said B. L. Criner certain real estate in the City of Orlando, County of Orange and State of Florida, described as follows, to-wit: Lot number five of Boone Revision according to plat thereof recorded in Plat Book 'D' page 134 Orange County records, the said property then and there being of the value of $9,000.00, the property of the said Belle Arbuthnot; that is to say that on the said date and in the said Orange County, Florida, the said B. L. Criner then and there went to the said Belle Arbuthnot and offered to assign to her a certain mortgage and notes secured thereby, the said mort-

gage and notes bearing date the 8th day of February, A. D. 1924, the said mortgage and notes being executed by Maud L. Siever and H. G. Siever, her husband, to B. L. Criner, the said mortgage being on the following described land in the County of Charlton and State of Georgia, to-wit: Land Lots Twenty-five (25) and Thirty-six (36) in the Tenth Land District, and Third Section thereof Charlton County, Georgia, said lots containing four hundred ninety (490) acres each, according to the State survey; also Lot No. One Hundred Fifty-nine (159) in the First Land District of, Charlton County, Georgia, less twenty (20) acres in the northeast corner of said lot owned by one Crews, leaving four hundred and seventy (470) acres; which mortgage was executed for the purpose of securing four certain promissory notes all dated February 8, 1924, one of said notes being for $3,000.00 due on or before six months after its date, one note being for $3000.00 due on or before one year, after its date, one note being for $4,000.00 due on or before two years after its date and one note being for $4,000.00 due on or before three years after its date, all of said notes being payable at the Bank of Osceola County, Kissimmee, Florida, signed by Maud L. Siever and H. G. Siever and endorsed by B. L. Criner; for a deed of conveyance to B. L. Criner of the property first above described; that in order to induce the said Belle Arbuthnot to sell and convey the property first above described to the said B. L. Criner the said B. L. Criner did then and there take the said Belle. Arbuthnot to Kissimmee, Osceola County, Florida, and the said B. L. Criner and the said H. G. Siever in the County of Osceola and State of Florida did then and there represent and pretend to the said Belle Arbuthnot that the said H. G. Siever was the owner of the land in Georgia described in said mortgage and that the land in Georgia described in said mortgage was then of great value, to-wit: of the value of $35,000.00; that the said Belle Arbuthnot believed said

representations and pretenses to be true and relied upon same and by reason of said representations and pretenses did thereafter on June 28, 1924, in the County of Orange and State of Florida sell and convey to the said B. L. Criner the land first above described by warranty deed dated June 28, 1924, which warranty deed was duly executed and acknowledged and filed for record in the office of the Clerk of the Circuit Court for Orange County, Florida, on June 30, 1924, and recorded in Deed Book 254 page 120 in the office of the Clerk of the Circuit Court for Orange County, Florida; and she the said Belle Arbuthnot, did in the County of Orange and State of Florida on the 28th day of June, 1924, take in payment for said deed of conveyance an assignment of the mortgage and notes above described, which assignment was executed by the said B. L. Criner, that the said Belle Arbuthnot did in the County of Orange and State of Florida on the 28th day of June, 1924, take and receive said mortgage and notes relying on and believing that the said H. G. Siever was the owner of the land in Georgia described in the said mortgage, and that the said land was of great value, to-wit: of the value of $35,000.00, that in truth and in fact the said H. G. Siever did not own the land described in said mortgage when he and the said B. L. Criner made the false pretenses and representations aforesaid but his title was defective and unmarketable, and the said land was not then of the value of $35,000.00 but was of less than the value of $3,000.00; that the said B. L. Criner and H. G. Siever when making the false representations and pretenses aforesaid knew the same were false when they so made them; that the said false representations and pretenses were false when made and the said B. L. Criner and H. G. Siever knowing same to be false did unlawfully, feloniously, knowingly, designedly, wilfully and intentionally make such false representations and pretenses as aforesaid with intent then and

there to defraud the said Arbuthnot: Contrary to the form of the statute in such case made and provided, and against the peace and dignity of the State of Florida.

(Signed)                              W. M. MURPHY,
          County Solicitor, Orange County, Florida.''

The plaintiffs in error, defendants in the court below, were duly arraigned and pleaded not guilty. On the 20th day of July, 1925, they were placed upon trial before a jury, the result of the trial being conviction of both of them on the first count of the information, and an acquittal of both on the second count. Immediately following their conviction the plaintiffs in error, through their attorneys, filed a motion in arrest of judgment, the gist of which motion was contained in the third ground thereof, as follows: ''Because said first count of the information upon which defendants were tried and convicted does not charge any offense against these defendants or either of them.''

This motion in arrest of judgment was denied. Then followed a motion for a new trial, denial thereof, and judgment sentencing B. L. Criner to three years imprisonment in the State prison, and H. G. Siever to five years in the State prison. The cause comes here on writ of error to review these proceedings.

The first count of the information charged Criner and Siever with two false statements, and only two. One of these statements was that Siever was the owner of a tract of land in Georgia, and the other was that this tract of land was worth $35,000.00. It was necessary, of course, for the information to state *facts* showing wherein these statements were false, which it attempted to do in this language: ''That in truth and in fact the said H. G. Siever did not own the land described in said mortgage when he and the said B. L. Criner made the false pretenses and representations aforesaid, but his title was defective and unmarket-

able, and the said land was not then of the value of $35,-000.00, but was of less than the value of $3,000.00.''

The law is well settled that in ordinary business transactions statements of value are mere expressions of opinion, and that erroneous statements of value will not support even a civil action for recision or cancellation.   Glass v. Craig, 83 Fla. 408, 91 South. Rep. 332.

It follows that the alleged false statement as to value set forth in the information does not amount to a criminal act of false pretense.   It is a matter of universal knowledge among people of common sense and experience that men's ideas of the values of items of property vary widely, and that the owners of property are inclined to over-estimate its value.   Prospective purchasers are required in law to take cognizance of this human frailty, and to investigate values on their own account.   If they fail to do this, they have no redress at law.   And to hold otherwise in a criminal case would be to open the door to a flood of petty prosecutions in all trades and walks of life.   The folly that would attach to and follow such a holding is pointedly illustrated in the bill of exceptions in this case, to which bill of exceptions we find it necessary to make only casual reference.   One of the witnesses *for the State testified* that the timber alone on the tract of land in question was worth fifty dollars per acre; or $40,000.00 for the eight hundred acres of timber, aside from the value of the soil.

The only other false statement charged in the information was that Siever owned the Georgia tract of land.   This statement is alleged to have been false in this: that Siever's title to the said land was unmarketable and defective.

It is no violation of the criminal laws of this State for one who actually has title to land to claim it as his own, and to sell it, even though some one else may have a better title to it.   Titles are matters of record and possession and

are open to anyone who may care to investigate, and the prospective purchaser can usually protect himself by such an investigation.

One claiming to own property to which he has no semblance of title might be guilty of criminal conduct, if he induced some one to purchase it upon his claim of ownership. But not so where he actually has some kind of title to the property, and the relative strength of two conflicting claims is a matter of opinion; for even the highest courts of the land are not always in accord on this subject of conflicting claims of title. The information in this case contains no allegation that the conflicting titles had been adjudicated against the title of Siever; and the bill of exceptions shows that this question of conflicting title went to the jury merely upon flimsy opinion testimony, based largely upon hearsay.

Appellate courts are adversely inclined toward motions in arrest of judgment attacking defects in the indictment or information, which defects were not attacked by motions to quash; because the motion to quash gives the State an opportunity to amend the defect before going to trial, and before the prosecution is barred by the statute of limitations. But when the information or indictment states facts showing that no ciminal offense has been committed, it will not support a verdict of conviction, and judgment ought to be arrested upon motion.

The court below erred in denying the motion in arrest of judgment; and for that error the judgment is reversed, and the cause is remanded with direction that the motion in arrest of judgment be granted and the defendants discharged.

BROWN, C. J., AND WHITFIELD, ELLIS, TERRELL AND STRUM, J. J., concur.

BUFORD, J., disqualified.