PEOPLE v WILDE

PEOPLE v BUSKIRK

1. FALSE PRETENSES—MISREPRESENTATION—OVERCHARGE.

An "overcharge" is an indefensible departure in a person's opinion of the value of his services from the established standard rather than a misrepresentation of fact; the latter is subject to prosecution under the false pretenses statute while the former is not (MCLA 750.218).

2. FALSE PRETENSES—NON-EXISTENT WORK—MISREPRESENTATION OF FACT.

A charge for non-existent repair work constitutes a misrepresentation of fact rather than an "overcharge", and may serve as a basis for a conviction of false pretenses (MCLA 750.218).

3. FALSE PRETENSES—ELEMENTS OF CRIME—RELIANCE.

Reliance by the victim on a misrepresentation of fact is an element of the crime of false pretenses (MCLA 750.218).

4. FALSE PRETENSES—ELEMENTS OF CRIME—RELIANCE—KNOWLEDGE.

Knowledge by the victim of the fraud involved creates a factual impossibility to the completion of the crime of false pretenses, since reliance no longer exists, and precludes punishment for the substantive offense but not for the attempt of the offense (MCLA 750.218).

Appeal from Recorder's Court of Detroit, John Kadela, J. Submitted Division 1 May 2, 1972, at Detroit. (Docket No. 12127.) Decided August 29, 1972.

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 32 Am Jur 2d, False Pretenses §§ 12, 15, 22.

[3] 32 Am Jur 2d, False Pretenses § 49.

[4] 32 Am Jur 2d, False Pretenses §§ 49, 54.

Attempts to commit offenses of larceny by trick, confidence game, false pretenses, and the like, 6 ALR3d 241.

Charles Wilde and Michael Buskirk were convicted of obtaining money under false pretenses. Defendants appeal. Reversed and remanded.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Dominick R. Carnovale,* Chief, Appellate Department, and *Thomas P. Smith,* Assistant Prosecuting Attorney, for the people.

*Welday, Goldstone, Boila & Ott,* for defendant on appeal.

Before: V. J. BRENNAN, P. J., and McGREGOR and BRONSON, JJ.

BRONSON, J. Defendants were convicted by jury verdict of obtaining money under false pretenses in violation of MCLA 750.218; MSA 28.415. Each defendant was sentenced to one year probation, fined $150 and ordered to pay $60 in restitution for this offense constituting a misdemeanor.

The defendants challenge their conviction upon the basis that the people failed to prove the requisite elements of the offense charged. They claim that (1) "overcharging" is insufficient to constitute a false pretense and (2) the false pretense statute is not violated unless the victim relies thereon to his detriment. The unique facts precipitating these arguments are as follows.

In October of 1970 Ronald Riehs took his 1967 Imperial to the Do-Right Collision Shop operated by defendants for a repair estimate of damage to the right rear quarter panel resulting from an automobile accident. During discussions with defendant Wilde concerning the estimate, Riehs inquired into the cost of repainting the entire car to

eliminate the problem of matching paint as an extra expense. When Riehs remarked that the quoted price of $125 was too high, Wilde suggested that Riehs secure a "cooperative" insurance adjuster to include this cost in his estimate for the insurance claim. Since Riehs was insured by the Detroit Automobile Inter-Insurance Exchange (AAA), Wilde suggested the name of one Pineau, a "cooperative" AAA agent.

Riehs was currently employed by AAA as a field representative in the road service department and informed his supervisor of Wilde's proposal. This information was thereafter forwarded to the assistant manager of Riehs' department who relayed it to the regional exchange manager responsible for the area in which defendant's shop was located. Prior to Riehs' automobile being sent to defendant's shop for the actual repair work, this regional manager inspected the car at Riehs' home and prepared his own estimate, which totaled $202.61. Thereafter Riehs' car was taken to defendant's shop where a formal repair estimate for submission to AAA was prepared by its agent Pineau which totaled $622.33. The disparity between those two estimates reflected excessive charges pursuant to an agreement between defendants and Pineau in which Pineau would inflate the estimates in return for a "kickback" in addition to providing a means in which the cost of the paint job could be hidden. Moreover, Pineau's estimate included a $60 charge to repair the trunk lid although no such damage was found by the regional manager during his examination or included in his estimate. AAA proceeded to pay the amount contained in Pineau's estimate facilitating the repair of Riehs' car, after which Pineau pled guilty to the

crime of false pretenses and was discharged. These events precipitated defendants being similarly charged and ultimately convicted.

Defendants' first allegation of error is that the evidence revealed only a case of "overcharging" which was not considered an element of the crime of false pretenses by this Court in *People v Marks,* 12 Mich App 690 (1968). Although the elements of the offense at issue were not enumerated by the *Marks* Court, they are considered by Michigan authorities to be as follows: (1) the intent to defraud, (2) the false pretense, and (3) the fraud accomplished. *People v Wakely,* 62 Mich 297 (1886); *People v Summers,* 115 Mich 537 (1898); *People v Johnson,* 190 Mich 170 (1916); *People v Lee,* 259 Mich 355 (1932); *People v Bagwell,* 295 Mich 412 (1940).[1]

The *Marks* Court did not find an "overcharge" to fall within these elements since they require a fraudulent misrepresentation and "a gross overcharge does not constitute a fraudulent misrepresentation".[2] The facts precipitating this conclusion indicate the defendant charged a 73-year-old spinster $600 for work to her chimney which possessed a true value of $25. Thus, the *Marks* Court reversed the defendant's conviction of obtaining money under false pretenses, finding that his reprehensible conduct of "overcharging" fell outside the statute.

Unlike *Marks,* in which the overcharge was for completed work, the present defendants use inflated estimates upon which others may rely prior to the work being initiated. The issue raised by defendants of whether this conduct constitutes an

---

[1] *Accord, People v Segal,* 180 Mich 316 (1914); *People v Rice,* 206 Mich 644 (1919).

[2] *People v Marks,* 12 Mich App 690, 692 (1968).

"overcharge" or a false pretense requires a careful examination of the *Marks* decision.

The defendant's conduct in *Marks* was considered reprehensible because it involved a misrepresentation of the value of the services rendered. Yet, the *Marks* Court did not find such a misrepresentation sufficient to be fraudulent and violate the statute. The reason underlying this variance can be found in the distinction between opinions and facts. The defendant's misrepresentation of value in *Marks* merely involves an inflated opinion as to the value of his services. Each citizen is capable of protecting himself since he is placed upon notice that the representation is based upon an opinion which is subject to distortion or deceit. As offensive as cases involving people being duped by gross misrepresentations of value may be, the Legislature has failed to make such chicanery a crime. Thus, the label "overcharge" is applied to those cases involving indefensible departures in a person's opinion of the value of his services from the established standard.

Misrepresentations of fact, on the contrary, offer an area for abuses in which the State should enter. Persons relying upon misrepresentations of fact are no longer placed upon notice that the inducement is subject to the speaker's whim or caprice since they are regarded as truths. The confidence placed in alleged facts and the diminished ability of people to protect themselves against fabricated facts require criminal sanctions to diminish the number of frauds. This distinction between misrepresentations of opinion and fact[3]

---

[3] This same distinction has been recognized in the analogous area of misrepresentations constituting torts. Professor Prosser describes the justification for this distinction as flowing from the common law attitude "toward the bargaining transactions with which the law of deceit has developed". "So long as he has not been misled by positive

provide the vehicle for distinguishing between "overcharges" and false pretenses.

The repair estimates at issue which were used to procure insurance payments clearly contained an element of misrepresentation. The estimates containing inflated prices for necessary repair work fall within the opinion category involving misrepresentations of value. Since the present case was not limited to these circumstances, we cannot sustain defendants' contention. The people offered testimony that the repair estimates at issue included a $60 charge for non-existent repair work to Riehs' trunk lid. This conduct, if true, involves a misrepresentation of fact upon which the charge of false pretenses could be sustained. In light of this testimony we cannot as a matter of law find that defendants were engaged in "overcharging". Such conflicting evidence creates a factual dispute whose resolution is exclusively a jury function. *People v Miller,* 301 Mich 93 (1942); *People v Hudson,* 386 Mich 665 (1972); *People v McIntosh,* 6 Mich App 62 (1967).[4] We may not invade the province of the jury and reach a contrary conclusion. *People v Moshier,* 306 Mich 714 (1943); *People v Paugh,* 324 Mich 108 (1949).

Defendant's second allegation of error is that AAA's knowledge that the pretense was false negated the reliance necessary to substantiate the crime charged. Finding reliance an integral part of this offense, we agree. Although the above authorities enumerating the elements of the offense did not specifically include reliance, it is encompassed by the phrase "the fraud must be accomplished".

statements of fact, he has no right to rely upon the judgment of his opponent." Prosser, Torts (3d ed), § 104, p 736.

[4] *Accord, People v Floyd,* 15 Mich App 284 (1968); *People v Williams,* 28 Mich App 486 (1970).

The accomplishment of a fraud inherently possesses a measure of reliance by the victim. The Court in *Higler v People,* 44 Mich 299, 302–303 (1880), recognized the importance of this component by stating:

"And if in any case the existence of any particular fact would be likely to beget confidence, there is no reason why a false assertion of its existence should not be a criminal pretense, as much as would be a false assertion of pecuniary responsibility, *provided it is equally relied upon,* and *equally effectual to accomplish the fraud designed."*[5] (Emphasis added.)

Similarly, the Court in *People v Larco,* 331 Mich 420, 429 (1951), reaffirmed this position stating:

"To support a conviction of obtaining money under false pretenses it was incumbent on the people to establish * * * that the person sought to be deceived *relied thereon to his detriment."* (Emphasis added.)

Current acceptance of this viewpoint is found in this Court's decision of *People v Sharpe,* 22 Mich App 454, 457–458 (1970), approving a jury instruction which added reliance as a specific element of the offense.

Pursuant to these authorities we have reviewed the record for evidence of reliance by AAA. AAA possessed both the repair estimate prepared by its regional manager approximating $200, and the inflated estimate of $622.33 prepared by their agent with defendants' assistance prior to defendants' beginning actual repairs. Since the $200 estimate was prepared pursuant to information supplied by a fellow employee that the repair estimates were fraudulent, AAA's knowledge that

---

[5] *See People v McAllister,* 49 Mich 12, 13 (1882), wherein the Court found no offense unless the party knew or had reason to believe that his representations are *relied* upon.

the pretense was false can neither be doubted nor denied. The subsequent payment of the fraudulent estimate cannot now be said to constitute reliance.[6] Whether this payment was made to entrap their agent and defendants or by mistake, we are bound by the elements of the offense. Admittedly, the purpose of the false pretense statute is to punish cheats,[7] but such cannot be accomplished when the victim has knowledge that the cheat is about to take place.

This knowledge by AAA created a factual impossibility to the completion of the crime and precludes punishment for the substantive offense as defined. This break in the chain of proof does not render defendants innocent but rather guilty of the inchoate crime, attempt to obtain money by false pretenses.[8] We find this result supported by other jurisdictions[9] and conclude that it is the better rule. *Commonwealth v Johnson,* 312 Pa 140; 167 A 344 (1933); *People v Camodeca,* 52 Cal 2d 142; 338 P2d 903 (1959). Finding the evidence to support only the lesser included offense of attempt for which defendants were not charged, their convictions of the substantive offense are reversed and remanded for new trial.

Reversed and remanded.

All concurred.

---

[6] Treatise authorities are in accord, relying only upon different characterizations: (1) if the victim knows the pretense is false the offense is not committed, (2) the property is not obtained by the untrue representation of fact if the real facts are known to the victim and (3) the victim must be deceived in fact. Miller, Criminal Law, § 121, p 388; Perkins, Criminal Law (2d ed), ch 4, § 4, p 308; 2 Wharton's Criminal Law and Procedure, § 588, p 316.

[7] *People v Wakely,* 62 Mich 297 (1886).

[8] MCLA 750.218; MSA 28.415 and MCLA 750.92; MSA 28.287.

[9] 6 ALR3d 241; 37 ALR3d 375, 398; *People v Camodega [sic],* 331 P2d 983 (Cal App, 1958); *Franczkowski v State,* 239 Md 126; 210 A2d 504 (1965); *Johnson v State,* 397 SW2d 857 (Tex Crim App, 1965); *Finley v State,* 440 SW2d 849 (Tex Crim App, 1969).