319 So.2d 135 (1975)
Charles Edward COLLINS, Appellant,
v.
STATE of Florida, Appellee.
No. 73-928.
District Court of Appeal of Florida, Second District.
September 26, 1975.
*136 Thomas J. Hanlon, Tampa, for appellant.
Robert L. Shevin, Atty. Gen., Tallahassee, and William I. Munsey, Jr., Asst. Atty. Gen., Tampa, for appellee.
McNULTY, Chief Judge.
Appellant was convicted of attempted grand larceny. The charge was brought under the omnibus larceny statute,[1] and the accusatory writ was framed in terms of attempted common law larceny as permitted by the statute. But the theory of the state's case was "larceny by trick" which, properly, may be brought under that statute.[2] We think, however, that the state failed to make out its case and accordingly we must reverse.
The undisputed operative facts are these. Appellant, holding himself out to be a supplier of lawn services, approached the alleged victim, Mrs. Mary Gunderson, at her home and offered to sell her lawn fertilizer at $1.85 per bucket. In response to Mrs. Gunderson's question as to the number of buckets needed, appellant said, "I don't know. I don't imagine too many." Mrs. Gunderson testified that, "I was of the same opinion that it wouldn't be too many." In any case, she accepted the offer and directed appellant to fertilize her lawn.
Appellant departed and returned shortly thereafter with two men and a load of fertilizer. After the three men had begun spreading the fertilizer, Mrs. Gunderson *137 inquired as to the character of the substance being used. Appellant said that it was "good fertilizer" and that it had a "lot of 6-6-6 in it." Mrs. Gunderson testified that although the "6-6-6" characterization sounded familiar, she was ignorant of the quality of different fertilizers and their components.
After completing the job, appellant presented Mrs. Gunderson with a bill for $450.50. Mrs. Gunderson, while objecting to the price as being exorbitant, nevertheless gave two checks in payment. She had second thoughts about the matter, however, and shortly thereafter contacted her niece and the sheriff about the propriety of the transaction. Acting on their advice she stopped payment on the two checks. Apparently, appellant never having actually received the monies, this was the basis for the attempted grand larceny charge being made herein rather than the grand larceny itself.
In addition to the foregoing, the state presented expert testimony tending to establish that the fertilizer was a "bottom line" product, was "not a good fertilizer" and that an excellent job could have been done for about $100. In addition, a chemical analysis of the soil sample showed that it was not commercial fertilizer consistent with 6-6-6 quality.
As noted, the theory of the state's case was larceny by trick which, as also noted, may be brought under § 811.021, supra. Under such a charge one may be guilty thereof when he gets possession of the property of another by means of fraud or trickery and has a preconceived purpose to appropriate such property to his own use or to deprive the owner of its use. This supports the "larceny" aspect of the charge on the theory that the trickery vitiates consent of the owner who is held to retain constructive possession up to the time of conversion by the taker.[3] But the gravamen of the charge in the first instance is "trick"; and there can be no operative "trick" if the victim is not tricked or swindled into reliance or is not induced by the "trick" into parting with his property.[4] The only "trick" or inducement established by the state's evidence prior to the agreement between the parties, i.e., the acceptance by Mrs. Gunderson of appellant's offer to fertilize her lawn, related to the amount of buckets of fertilizer needed. Appellant made no representation as to a given number of buckets needed and, indeed, Mrs. Gunderson's own testimony was that she agreed with appellant that not "too many" buckets appeared necessary. So in the first instance there was no reliance on any representation of appellant. Moreover, the fact that each may afterwards have had a different view as to what constituted "too many" certainly cannot be a predicate for an essential element of larceny by trick, to wit: deception in the inducement. Accordingly, there was no showing whatever of inducement by, nor reliance upon, any "trick."
It is true that appellant represented the fertilizer to be "good fertilizer" and that he alluded to its "6-6-6" quality. Even conceding that it was neither good quality nor of 6-6-6 quality, however, these latter representations were made after the deal was made and, again, were not the predicate for Mrs. Gunderson's reliance or acceptance. Furthermore, as to the representation of good quality, this is mere "dealer puffing" and is not condemned by the criminal law.[5]
We conclude, therefore, that however reprehensible appellant's business practices may be in the eyes of the Better Business Bureau, and however amenable he may be to revocation of whatever local business licenses he may have, his actions herein do *138 not constitute a crime or an attempt to commit a crime under the laws of this state. Mrs. Gunderson has already availed herself of one civil remedy she had by stopping payment on her checks. Still other civil remedies or defenses may be available to her either in an action which she may be advised to bring herself or in defense of any action appellant may be advised to bring. The civil side of the court, however, is the proper forum from here on in.
In view whereof, the judgment appealed from should be, and it is hereby, reversed and the cause is remanded with directions that appellant be discharged.
SCHEB, J., concurs.
BOARDMAN, J., dissents.
NOTES
[1] F.S. § 811.021.
[2] See Williams v. State (Fla.App.4th, 1970), 239 So.2d 127.
[3] Id.
[4] See Mehr v. State (Fla. 1952), 59 So.2d 259.
[5] See Criner v. State (1926), 92 Fla. 483, 109 So. 417; 14 Fla.Jur. False Pretenses § 5 (1957).