542 S.E.2d 433

**STATE of West Virginia, Plaintiff Below, Appellee,**

v.

**Danny L. BLANKENSHIP, Defendant Below, Appellant.**

**No. 27461.**

Supreme Court of Appeals of West Virginia.

Submitted Oct. 24, 2000.

Decided Dec. 1, 2000.

614

David A. Downes, Front Royal, Virginia, Attorney for the Appellant.

Darrell V. McGraw, Jr., Attorney General, Silas B. Taylor, Senior Deputy Attorney General, Attorneys for the State of West Virginia.

PER CURIAM.

This appeal was filed by Danny L. Blankenship, appellant/defendant below (hereinaf-

ter referred to as "Mr. Blankenship"), from his conviction of one count of obtaining money by false pretenses. The Circuit Court of Fayette County sentenced Mr. Blankenship to not less than one nor more than ten years in the penitentiary. In this appeal, Mr. Blankenship assigns as error: (1) that the evidence was insufficient for a conviction, (2) the denial of certain jury instructions, and (3) improper closing argument remarks by the prosecutor. Based upon the parties' arguments on appeal, the record designated for appellate review, and the pertinent authorities, we conclude that the Circuit Court of Fayette County committed no error. The judgment is therefore affirmed.

## I.

## FACTUAL AND PROCEDURAL HISTORY

On September 8, 1997, Mr. Blankenship drove by the home of Bobby and Nancy Dix (hereinafter referred to as "the Dixes"). He inquired as to whether the Dixes wanted their driveway repaved.[1] Mr. Blankenship indicated that he had some asphalt left from a previous paving job. While the trial testimony revealed that Mr. Blankenship could not give a specific cost amount for the paving, he estimated that the paving job would cost between $3,000.00 and $3,500.00.[2] A contract for the work was executed by Mrs. Dix. The contract did not include a cost amount or estimate when it was signed.

On September 9, 1997, Mr. Blankenship and his crew began work on the driveway. As the work progressed, Mr. Blankenship informed Mr. Dix that the cost would probably be around $4,300.00. At some point on the same day, the cost estimate reached $5,000.00.

Work was stopped on the pavement for a few days because of rain. When weather permitted, Mr. Blankenship and his crew returned and finished the pavement job. Mr. Blankenship demanded $6,000.00 when the work was completed. Mrs. Dix questioned the amount charged. Mr. Blankenship explained to her how he arrived at the figure, and demanded payment in cash. Mrs. Dix went to a bank, obtained $6,000.00 in cash, and paid Mr. Blankenship.[3]

The Dixes believed that Mr. Blankenship took advantage of them by charging $6,000.00 for the pavement. They were not satisfied with the quality of the work and attempted at least on one occasion to contact Mr. Blankenship.[4] However, they were unable to locate him.

The Dixes eventually cooperated with authorities in an investigation of Mr. Blankenship's pavement work.[5] The investigation lead to a five count indictment that included a charge of obtaining money by false pretenses.[6] A jury trial was held on March 22 and 23, 1999.[7] The jury returned a verdict finding Mr. Blankenship guilty of obtaining money by false pretenses. Thereafter, the circuit court sentenced Mr. Blankenship to not less than one nor more than ten years in

---

1. Mrs. Dix was not at home when Mr. Blankenship initially stopped. However, she returned before Mr. Blankenship left the home.

2. There was conflicting evidence as to whether or not Mr. Blankenship gave an estimate of costs in terms of square feet or square yards.

3. Mr. Blankenship inserted $600.00 on the contract as the amount paid for the work. He told Mrs. Dix that this figure would help her for tax purposes.

4. Although Mr. Blankenship promised to return in thirty days to place some chemicals in the area to prevent grass from growing, he never returned.

5. The record indicates that authorities were alerted to Mr. Blankenship by accident. The police arrested him during their investigation

and arrest of another individual for alleged workers' compensation fraud. It was a result of Mr. Blankenship having $6,000.00 in cash in his vehicle that ultimately lead the police to the Dixes and the subsequent prosecution.

6. Two counts of the indictment were dismissed prior to submission of the case to the jury. A third count was dismissed after the jury failed to agree on a verdict, and the jury acquitted Mr. Blankenship of a fourth count. Additionally, a co-defendant was named in each count of the indictment. The record does not disclose the disposition of charges against the co-defendant.

7. Mr. Blankenship did not testify, nor did he call any witnesses on his behalf.

the penitentiary. It is from this sentence that Mr. Blankenship now appeals.

## II.

## DISCUSSION [8]

### A. *Sufficiency of Evidence*

 The first issue presented by Mr. Blankenship is that the evidence was insufficient to find him guilty of obtaining money by false pretense.[9] In reviewing a challenge to the sufficiency of the evidence, we have held:

> The function of an appellate court when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, is sufficient to convince a reasonable person of the defendant's guilt beyond a reasonable doubt. Thus, the relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt.

Syl. pt. 1, *State v. Guthrie*, 194 W.Va. 657, 461 S.E.2d 163 (1995). It was further stated by this Court in syllabus point 3 of *Guthrie*:

> A criminal defendant challenging the sufficiency of the evidence to support a conviction takes on a heavy burden. An appellate court must review all the evidence, whether direct or circumstantial, in the light most favorable to the prosecution and must credit all inferences and credibility assessments that the jury might have drawn in favor of the prosecution. The

evidence need not be inconsistent with every conclusion save that of guilt so long as the jury can find guilt beyond a reasonable doubt. Credibility determinations are for a jury and not an appellate court. Finally, a jury verdict should be set aside only when the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt. To the extent that our prior cases are inconsistent, they are expressly overruled.

With regard to the specific crime for which Mr. Blankenship was convicted, this Court has previously explained that "[i]n order to obtain a conviction for the crime of obtaining money by false pretenses ... the prosecution must prove the essential elements of the offense, namely: (1) the intent to defraud; (2) actual fraud; (3) the false pretense was used to accomplish the objective; and (4) the fraud was accomplished by means of the false pretense, i.e., the false pretense must be in some degree the cause, if not the controlling cause, which induced the owner to part with his property." *State v. Moore*, 166 W.Va. 97, 108, 273 S.E.2d 821, 829 (1980) (citation omitted).

Mr. Blankenship submits several arguments in support of his insufficiency of evidence claim. During the trial, the State presented expert testimony that the normal price for the work on the Dixes' driveway was $1,569.00. Mr. Blankenship contends that the simple fact that he charged $6,000.00 for the pavement work, and an expert for the State opined the price of the work should have been $1,569.00, is not dispositive of a "false pretense" charge.[10] The State con-

---

8. We generally set forth the appropriate standard for our review before discussing the issues raised on appeal. However, when an appeal involves several issues that each have their own standard of review, as in this case, we discuss the standard of review when each issue is presented.

9. The offense is set out in W. Va.Code § 61–3–24(a)(1994) as follows:

> (1) If a person obtains from another by any false pretense, token or representation, with intent to defraud, any money, goods or other property which may be the subject of larceny
>
> . . .
>
> . . .

> (3) Such person is guilty of larceny. If the value of the money, goods or other property is one thousand dollars or more, such person is guilty of a felony . . . . If the value of the money, goods or other property is less than one thousand dollars, such person is guilty of a misdeameanor[.]

10. Mr. Blankenship cited to several cases from other jurisdictions holding that differences between the actual value of services and the actual price charged is not relevant in a false pretense prosecution. *See Criner v. State*, 92 Fla. 483, 109 So. 417 (1926); *People v. Wilde*, 42 Mich.App. 514, 202 N.W.2d 542 (1972); *Watson v. Commonwealth*, 4 Va.App. 450, 358 S.E.2d 735

cedes this point, but argues that it is irrelevant. We agree with the State that this issue carries no weight on the question of insufficiency of evidence.[11]

Mr. Blankenship also argues that there was no evidence to establish the fourth element of a false pretense charge, i.e., "the false pretense must be in some degree the cause, if not the controlling cause, which induced the owner to part with his property." Mr. Blankenship contends that there was no evidence to show that the Dixes relied on any price except the amount actually demanded by him. The State responds that there was sufficient evidence to show Mr. Blankenship's "deliberate and successful effort to mislead the Dixes into believing that the price would be far less than he actually intended to charge."

In reviewing the testimony of the Dixes, we find the jury could conclude that the Dixes were induced to enter the contract on cost estimates that were far less than that which was eventually charged. Further, the jury could have reasonably concluded, based upon the evidence, that Mr. Blankenship intended to charge a price far above his initial estimate.[12]

Mr. Blankenship made a second estimate after his crew had torn up the Dixes' pavement.[13] The State properly asserts that at this point the Dixes could not realistically have terminated the contract. Otherwise, they would have been left with a torn up driveway.[14]

In sum, we find the evidence was sufficient beyond a reasonable doubt for the jury to return a verdict finding Mr. Blankenship guilty of obtaining money by false pretense.

### B. Denial of Jury Instructions

Mr. Blankenship has assigned as error several jury instructions. We have stated that, "[i]n general, the question on review of the sufficiency of jury instructions is whether the instructions as a whole were sufficient to inform the jury correctly of the particular law[.]" *State v. Miller*, 197 W.Va. 588, 607, 476 S.E.2d 535, 554 (1996). We have also articulated our standard of review of jury instructions, in syllabus point six of *Tennant v. Marion Health Care Foundation, Inc.*, 194 W.Va. 97, 459 S.E.2d 374 (1995), as follows:

> The formulation of jury instructions is within the broad discretion of a circuit court, and a circuit court's giving of an instruction is reviewed under an abuse of discretion standard. A verdict should not be disturbed based on the formulation of the language of the jury instructions so long as the instructions given as a whole are accurate and fair to both parties.

"Of course, our review of the legal propriety of the trial court's instructions is *de novo*." *Skaggs v. Elk Run Coal Co., Inc.*, 198 W.Va. 51, 63, 479 S.E.2d 561, 573 (1996) (citation omitted). We further stated in syllabus point four of *State v. Guthrie, supra*:

> A trial court's instructions to the jury must be a correct statement of the law and

---

(1987). The State correctly notes that the authorities relied upon by Mr. Blankenship involved cases where the victims knew the actual price for services before work began, and, therefore, were not deceived by the defendants' intentions.

11. The issue of the actual value versus the price charged is relevant to the issue of whether a misdemeanor or felony false pretense charge was proven. As is discussed later in this opinion, to obtain a conviction for a felony false pretense charge, the victim must have been deprived of property worth $1,000.00 or more. *See also supra* note 9.

12. The jury also heard evidence regarding other victims of Mr. Blankenship's paving scam.

13. Mr. Blankenship argues in his brief that the higher estimates became necessary because of

additionally requested work. The State responds that no evidence was introduced showing that the Dixes requested any additional work. Further, Mr. Blankenship has failed to say exactly what additional work was requested.

14. Mr. Blankenship has cited three 19th century cases that hold that a false pretense may be too remote if it involves a collateral matter. This is a meritless issue insofar as "remoteness" is not an element of proof that must be overcome by the State. "It is sufficient that the representations upon which the money or property is obtained[,] falsely assert the existence or non existence of a fact, and were made with the intention of procuring the money or property of another." Syl. pt. 1, in part, *Sudnick v. Kohn*, 81 W.Va. 492, 94 S.E. 962 (1918).

supported by the evidence. Jury instructions are reviewed by determining whether the charge, reviewed as a whole, sufficiently instructed the jury so they understood the issues involved and were not mislead by the law. A jury instruction cannot be dissected on appeal; instead, the entire instruction is looked at when determining its accuracy. A trial court, therefore, has broad discretion in formulating its charge to the jury, so long as the charge accurately reflects the law. Deference is given to a trial court's discretion concerning the specific wording of the instruction, and the precise extent and character of any specific instruction will be reviewed only for an abuse of discretion.

We will review each of the jury instruction issues individually.

■ **1. False Pretense Instruction.** Mr. Blankenship first argues that the trial court committed error in refusing to give his proffered instruction on the four elements of a false pretense charge, as is outlined in *State v. Moore, supra.* The trial court rejected Mr. Blankenship's instruction stating that the matters were covered by the court's instruction. Mr. Blankenship contends that the trial court's instruction was confusing because it included at least nine separate elements.[15] Additionally, Mr. Blankenship complains that the instruction omitted the element of "actual fraud," as was required by *Moore.*

The State responds that any excess language in the instruction was mere surplusage and did not confuse the jury. The State also contends that, while the phrase "actual fraud" was not used in the instruction, the instruction covered this element through the use of the phrases "intent to defraud" and "use of false pretenses, tokens and representations."

■ We have held that "[d]uplication of instructions is neither desirable nor necessary." Syl. pt. 6, *Thrasher v. Amere Gas Utils. Co.,* 138 W.Va. 166, 75 S.E.2d 376 (1953). Regarding a trial court's refusal to give a requested jury instruction, we have held that:

A trial court's refusal to give a requested instruction is reversible only if: (1) the instruction is a correct statement of the law; (2) it is not substantially covered in the charge actually given to the jury; and (3) it concerns an important point in the trial so that the failure to give it seriously impairs a defendant's ability to effectively present a given defense.

Syl. pt. 11, *State v. Derr,* 192 W.Va. 165, 451 S.E.2d 731 (1994). We pointed out in the *Derr* decision that there is no requirement "'that any particular form of words be used in advising the jury of the government's burden of proof [.]'" 192 W.Va. at 180, 451 S.E.2d at 746 (quoting *Victor v. Nebraska,* 511 U.S. 1, 114 S.Ct. 1239, 1243, 127 L.Ed.2d 583 (1994)). Moreover, "[w]hile the instruction offered by [Mr. Blankenship] may have been more 'charitable,' the Court does not believe that the trial judge's refusal to give it constituted reversible error in light of the charge actually given." *State v. Thompson,* 176 W.Va. 300, 308, 342 S.E.2d 268, 276 (1986).

■ **2. Lessor Included Offense of Misdemeanor False Pretense.** Mr. Blankenship next complains that the trial court committed error by refusing to give a proffered instruction on the lesser included of-

**15.** The trial court's instruction on this issue was as follows:

Obtaining money by false pretenses, a felony, as alleged in Count 2 of the indictment, is committed when any person obtains from another person any money, goods or other property of a value of $1,000.00 or more by false pretense, token or representation, with intent to defraud and permanently deprive the person of their money, goods or other property.

To prove the commission of the crime of obtaining money by false pretenses, a felony, as alleged in Count 2 of the indictment, the State must prove beyond a reasonable doubt each of the following elements:

That the defendant, Danny L. Blankenship, in Fayette County, West Virginia, on or about the _____ day of September, 1997, unlawfully, fraudulently, designedly and feloniously obtained from Bobby Dix and Nancy Dix money of a value of $1000.00 or more by the use of false pretenses, tokens and representations, with the intent to defraud and permanently deprive Bobby Dix and Nancy Dix of their money.

fense of misdemeanor false pretense.[16] As a general rule, an instruction which is not sustained by the evidence should be refused. Syl. pt. 8, *Thrasher, supra.* In syllabus point 1 of *State v. Jones,* 174 W.Va. 700, 329 S.E.2d 65 (1985), we provided the following guidelines for determining whether to give an instruction on a lesser included offense:

> The question of whether a defendant is entitled to an instruction on a lesser included offense involves a two-part inquiry. The first inquiry is a legal one having to do with whether the lesser offense is by virtue of its legal elements or definition included in the greater offense. The second inquiry is a factual one which involves a determination by the trial court of whether there is evidence which would tend to prove such lesser included offense.

Mr. Blankenship contends that out of the $6,000.00 he charged the Dixes, they were only overcharged $697.67. This calculation was determined by Mr. Blankenship on the theory that he had initially quoted the Dixes a price of $2.50 per square foot of asphalt which, when multiplied by 2,120.93 square feet of asphalt, totals $5,302.33.

We find that the trial court committed no error by refusing a lesser included offense instruction. First, the testimony as to whether a price was quoted in terms of square feet or square yards was speculative and conflicting. Mr. Dix recalled a quote of $2.25 per square yard; while Mrs. Dix was unsure if the quote was $2.50 per square yard or square foot. The number which appeared to be certain was an initial estimate of $3,000.00 to $3,500.00. There was also evidence by the State's expert that the pavement work performed had a value of $1,569.00. We are convinced that this evidence did not rise to the level of warranting a lesser included offense instruction.

**3. Simultaneous Co-Existence of Fraudulent Intent and False Representation.** Mr. Blankenship next argues that the trial committed error by refusing his proffered instruction that the State had to prove that fraudulent intent co-existed at the time of the false representation. We have held that "[t]he trial court must instruct the jury on all essential elements of the offenses charged, and the failure of the trial court to instruct the jury on the essential elements deprives the accused of his fundamental right to a fair trial, and constitutes reversible error." Syllabus, *State v. Miller,* 184 W.Va. 367, 400 S.E.2d 611 (1990).

In support of his argument, Mr. Blankenship cites this Court's decision in *State v. Smith,* 97 W.Va. 313, 125 S.E. 90 (1924). The decision in *Smith* involved a conviction for larceny. One of the errors assigned in the case was that the trial court failed to instruct the jury that the defendant had the intent to commit larceny at the time he came into possession of the money involved in the crime. We stated in *Smith* that "[i]f the means employed were simply to obtain possession of the money for some lawful purpose, and with the assent of the owner, and with no present intent to steal, the act would not be larceny." *Smith,* 97 W.Va. at 314, 125 S.E. at 91. In syllabus point 1 of *Smith* we held:

> To warrant conviction for larceny, embezzlement, or of obtaining goods or money by false pretenses the accused must have had the present intent to commit the offense at the time; and an instruction to the jury omitting this element in the several offenses is erroneous.

We affirmed the conviction in *Smith* after reviewing the record as a whole. In doing so, we held in syllabus point 2 of *Smith* that "[t]hough there be error in such an instruction, or in the admission or rejection of evidence, yet, if on the whole case presented to the jury, the jury could not properly have reached a different verdict, the verdict should not be set aside."

In the instant case, the State argues that the trial court's general charge on specific intent adequately informed the jury that it had to find Mr. Blankenship had fraudulent intent at the time of his false representation. The trial court instructed the jury, "[o]ne of the elements of the crimes charged in the indictment in this case is the element of

---

16. The criteria for felony and misdemeanor convictions under the false pretense statute are set out in W. Va.Code § 61–3–24(a)(3). *See supra* note 9.

specific intent. That is to say, before this defendant can be guilty as charged, he must have intended to do what he is accused of doing."

■ Our cases support the State's position that a general instruction may cure an omission of a specific element of an offense. "When instructions are read as a whole and adequately advise the jury of all necessary elements for their consideration, the fact that a single instruction is incomplete or lacks a particular element will not constitute grounds for disturbing a jury verdict." Syl. pt. 6, *State v. Milam*, 159 W.Va. 691, 226 S.E.2d 433 (1976). *Accord State v. Vance*, 168 W.Va. 666, 675, 285 S.E.2d 437, 443 (1981). In view of the trial court's general instruction on specific intent, we find no prejudicial error in the rejection of the proffered instruction.

■ **4. Instruction on "Puffing."** Lastly, Mr. Blankenship argues that the trial court committed error by rejecting his instruction on "puffing." The instruction rejected was as follows: "The law is well settled that in ordinary business transactions statements of value are mere expressions of opinion, and that erroneous statements of value will not support even a civil action for rescission or cancellation."[17] The trial court rejected this instruction as an incomplete statement of the law.

■ Our cases support the trial court's conclusion that the proffered instruction was incomplete. "This Court has also looked askance at what is commonly called 'dealers talk' or 'puffing' as an excuse for misrepresentations." *Lengyel v. Lint*, 167 W.Va. 272, 277, 280 S.E.2d 66, 69 (1981). The rule in West Virginia is that "a vendor guilty of a representation made with intent to deceive should not be heard to say that the purchaser ought not to have believed him." *Horton v. Tyree*, 104 W.Va. 238, 242–43, 139

S.E. 737–38 (1927). Furthermore, this Court has held that "[o]ne to whom a representation is made may believe it to be true and act thereon without making inquiry or investigation to determine its truth." Syl. pt. 3, *Morrison v. Bank of Mount Hope*, 124 W.Va. 478, 20 S.E.2d 790 (1942). *See also* Syl. pt. 6, *Gall v. Cowell*, 118 W.Va. 263, 190 S.E. 130 (1937) ("A representation, untrue in fact, made by one party to a contract, as of his own knowledge, which induces the other party to enter into the contract, whereas the first party was uninformed as to the truth or falsity of the representation, is fraudulent in equity, even in the absence of actual fraudulent intent."); Syl. pt. 2, *Stout v. Martin*, 87 W.Va. 1, 104 S.E. 157 (1920) ("One who represents that a certain condition exists, when in fact he has no knowledge in regard thereto, will be liable to another, who deals with him upon the faith of such representation, should it turn out to be false."); Syl. pt. 2, *Staker v. Reese*, 82 W.Va. 764, 97 S.E. 641 (1918) ("One to whom a representation has been made as an inducement to enter into a contract has the right to rely upon it as true quoad the maker, without making inquiry or investigation to determine the truth thereof."). In light of our previous holding that "[a]n instruction which incorrectly states the law should be refused," Syl. pt. 7, *Thrasher v. Amere Gas Utils. Co., supra*, we find the proffered instruction by Mr. Blankenship was properly refused by the circuit court as it incorrectly stated the law on "puffing" in this jurisdiction.[18]

### C. Improper Closing Argument Remarks by the Prosecutor

■ Mr. Blankenship assigns error to several remarks made by the prosecutor during closing arguments. When reviewing remarks made by a prosecutor, we have held:

Four factors are taken into account in determining whether improper prosecuto-

---

17. The proffered instruction came from an opinion by the Florida Supreme Court in *Criner v. State*, 92 Fla. 483, 109 So. 417 (1926). The *Criner* decision involved a criminal charge of misrepresentation as to the value of real property. The court in that case found that defendants could not be held criminally liable for overstating the value of real property.

18. Mr. Blankenship makes a final and totally meritless argument that the trial court was in error in failing to instruct the jury that if the evidence showed that he was merely collecting a debt, then there was no intent to defraud. The so-called "debt" Mr. Blankenship sought to collect was incurred as a result of his fraudulent representations.

rial comment is so damaging as to require reversal: (1) the degree to which the prosecutor's remarks have a tendency to mislead the jury and to prejudice the accused; (2) whether the remarks were isolated or extensive; (3) absent the remarks, the strength of competent proof introduced to establish the guilt of the accused; and (4) whether the comments were deliberately placed before the jury to divert attention to extraneous matters.

Syl. pt 6, *State v. Sugg*, 193 W.Va. 388, 456 S.E.2d 469 (1995).

Mr. Blankenship failed to make an objection to the prosecutor's remarks prior to the jury retiring for deliberations. Consequently, the trial court rejected Mr. Blankenship's belated motion for a mistrial. The trial court ruled: "[y]ou should have objected to those types of arguments if you felt they were improper, so that the court could have dealt with them at that time before the jury."

 The State argues that this issue is not properly before this Court because Mr. Blankenship failed to make timely objections. We have held that "[i]f either the prosecutor or defense counsel believes the other has made improper remarks to the jury, a timely objection should be made coupled with a request to the court to instruct the jury to disregard the remarks." Syl. pt. 5, in part, *State v. Grubbs*, 178 W.Va. 811, 364 S.E.2d 824 (1987).[19] This Court has long held that "[f]ailure to make timely and proper objection to remarks of counsel made in the presence of the jury, during the trial of a case, constitutes a ... [forfeiture] of the right to raise the question thereafter in the trial court or in the appellate court." Syl. pt. 1, in

part, *State v. Garrett*, 195 W.Va. 630, 466 S.E.2d 481 (1995). *Accord* Syl. pt. 11 *State v. Davis*, 205 W.Va. 569, 519 S.E.2d 852 (1999); Syl. pt. 5, *Tennant v. Marion Health Care Found., Inc.*, 194 W.Va. 97, 459 S.E.2d 374 (1995); Syl. pt. 1, *Daniel B. by Richard B. v. Ackerman*, 190 W.Va. 1, 435 S.E.2d 1 (1993); Syl. pt. 5, *State v. Davis*, 180 W.Va. 357, 376 S.E.2d 563 (1988); Syl. pt. 7, *State v. Cirullo*, 142 W.Va. 56, 93 S.E.2d 526 (1956); Syl. pt. 6, *Yuncke v. Welker*, 128 W.Va. 299, 36 S.E.2d 410 (1945). We agree with the State that this issue was not properly preserved, and we therefore decline to address the matter.[20]

## IV.

## CONCLUSION

In view of the foregoing, we affirm the judgment of the circuit court.

Affirmed.

Justice MCGRAW, deeming himself disqualified, did not participate in the decision of this case.

Judge THORNSBURY, sitting by temporary assignment.

---

19. *But see* Syl. pt. 3, *Lacy v. CSX Transp. Inc.*, 205 W.Va. 630, 520 S.E.2d 418 (1999) ("To preserve error with respect to closing arguments by an opponent, a party need not contemporaneously object where the party previously objected to the trial court's in limine ruling permitting such argument, and the argument pursued by the opponent reasonably falls within the scope afforded by the court's ruling.").

20. Mr. Blankenship has invited this Court to invoke the plain error doctrine to this assignment of error. We have reviewed the remarks of the prosecutor and find that this issue does not warrant application of the plain error doctrine. "The plain error doctrine of W. Va. R.Crim. P.

52(b), whereby the court may take notice of plain errors or defects affecting substantial rights although they were not brought to the attention of the court, is to be used sparingly and only in those circumstances in which a miscarriage of justice would otherwise result." Syl. pt. 4, *State v. Grubbs*, 178 W.Va. 811, 364 S.E.2d 824 (1987). We also held in syllabus point seven of *State v. Miller*, 194 W.Va. 3, 459 S.E.2d 114 (1995) that "[t]o trigger application of the 'plain error' doctrine, there must be (1) an error; (2) that is plain; (3) that affects substantial rights; and (4) seriously affects the fairness, integrity, or public reputation of the judicial proceedings."