PEOPLE *v.* JOHNSON

Opinion of the Court

1. False Pretenses—Elements—Criminal Law.

The essential elements of the offense of false pretenses with intent to defraud are (1) an intent to defraud; (2) the use of false pretenses or representations regarding an existing fact; and (3) the accomplishment of the intended fraud by means of such false pretenses (MCLA § 750.218).

2. False Pretenses—Criminal Character of Act—Means Used in Obtaining Money.

The criminal character of the act of obtaining money by false pretenses is determined by the means used in obtaining the money, and if one gives up money and assumes obligations based on false representations made by a party, detriment seems self-evident.

3. False Pretenses—Real Estate Transaction—Reliance.

The fact that the complainant-buyer in a real estate transaction had experience in the real estate field does not insulate the

References for Points in Headnotes

[1–3, 5, 6] 32 Am Jur 2d, False Pretenses § 12 *et seq.*
[4] 19 Am Jur 2d, Corporations § 1391 *et seq.*
[7] 5 Am Jur 2d, Appeal and Error § 545.

defendant-seller from prosecution for the crime of obtaining money under false pretenses, for the relevant consideration in the criminal law is whether there was in fact reliance.

4. Corporations—Corporate Officers—Criminally Liable for Own Acts—Performed in Official Capacity.

Corporate officers may be criminally liable for their own acts although performed in their official capacity as such officers.

DISSENT BY V. J. BRENNAN, J.

5. False Pretenses — Statutes — Requirement — Suffer Detriment.

*The statute defining the crime of obtaining money under false pretenses has been authoritatively construed to require that the person from whom the money is obtained suffer a detriment as a result of the misrepresentation (MCLA § 740.218).*

6. False Pretenses — Unwarranted Conviction — Complainant Suffered No Detriment.

*Conviction of obtaining money under false pretenses should not stand, where there is nothing on the record showing that the complainant received anything less than what he bargained for (MCLA § 750.218).*

7. New Trial—Criminal Law—Failure of Proof—Due to Inadvertence—No Objection by Counsel.

*A new trial should not be ordered, if it does not appear that the failure of proof was due to inadvertence to which no objection or motion was made.*

Appeal from Recorder's Court of Detroit, Geraldine Bledsoe Ford, J.  Submitted Division 1 December 2, 1969, at Detroit.  (Docket No. 5,578.) Decided November 27, 1970.

Roland Johnson was convicted of obtaining more than $100 under false pretenses.  Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Samuel J. Torina,* Chief

Appellate Lawyer, and *Leonard Meyers,* Assistant Prosecuting Attorney, for the people.

*Jaffe, Snider, Raitt, Garratt & Heuer,* for defendant.

Before: R. B. Burns, P. J., and Holbrook and V. J. Brennan, JJ.

Holbrook, J. On February 7, 1968, Roland Johnson was found guilty by the Honorable Geraldine Bledsoe Ford of Recorder's Court for the City of Detroit and on March 21, 1968, he was sentenced to five years' probation for the felony of obtaining more than $100 under false pretenses following a trial held October 11, 12, and 13, 1967. Defendant has taken this appeal.

The pertinent facts are stated as follows:

In June 1966, Benjamin and Sarah Latta decided to attempt to sell their house at 17822 Brush Street in Detroit for the unpaid balance of approximately $8,500 on their first mortgage and the unpaid balances of three home improvement loans, which in July 1966, had gross payoffs totaling approximately $9,950, net payoffs totaling approximately $7,200. Sarah Latta's daughter saw an advertisement in the 1965 Detroit Yellow Pages telephone directory stating:

"Roland Johnson Realty & Investment Co. We pay cash for homes"

with a picture of Roland Johnson and telephoned that number, whereupon Sarah Latta asked Roland Johnson (who was not then licensed as a real estate broker or salesman) if he was a real estate agent, to which she received an affirmative reply, and asked him to come out to her house. Upon his

arrival, Sarah Latta advised Roland Johnson that she wished to sell the house in return for the assumption of the first mortgage of $8,500 and the immediate payment of the home improvement loans which she told him were approximately $9,000; then she gave him the home improvement loan payment books which he then and there figured up without using the schedule or chart necessary to compute mathematically the net payoffs, was told by him that he was putting the property up or listing it for sale, and signed papers to take the loans out of her and her husband's names so that Roland Johnson could sell the property. The Lattas did not read or understand these papers. A sign was put in front of the house stating:

"For Sale. Roland Johnson Real Estate and Investment Company"

after which three groups of people came to see the house.

On or about July 3, 1966, George Kattouah, who was then licensed and employed as a real estate salesman, was a registered land surveyor, lived and worked within one-half mile of the Brush Street property, and had nine years' experience in purchasing approximately 15 multiple-family dwellings for his own investment and income purposes, saw that sign on the Brush Street property, telephoned the number advertised on the sign, and arranged a meeting with Roland Johnson at the property when the Lattas and their children were in the house. The Lattas were known to and believed by George Kattouah and his wife Mary to be the owners of the Brush Street property inasmuch as the Lattas and Kattouahs had had a serious disagreement as to sharing the cost of erecting a fence between the `Lattas' home and adjacent property

owned by the Kattouahs. George Kattouah testified that he thought or had the impression that the Lattas were selling the house and that Mr. Johnson was their broker, but didn't know for sure, and that Roland Johnson said the Lattas wanted $2,000 for their equity. George Kattouah then went to the office of Roland Johnson Real Estate & Investment Co., left a $100 deposit with defendant and made to him an offer to pay $1,500 in cash and to assume the mortgage for $8,500 and existing home improvement loans represented by defendant to be in the amount of approximately $5,500. George Kattouah further testified that while he knew it was possible to call lending institutions to ascertain net payoffs he did not do so with respect to any of these loans, that he accepted Roland Johnson's estimate of $5,500. A few days thereafter Mr. Kattouah called Mr. Johnson who stated, "Okay. Your offer has been accepted, so bring your money and come in and let's close the deal." The original purchase agreement which Mr. Kattouah had received on making the offer was taken by Roland Johnson at the time of closing the transaction. At the closing, George Kattouah and his wife Mary signed a written notarized agreement to pay the outstanding three home improvement loans which were specifically described therein, and stated to be in the approximate amount of $5,500. Mr. Kattouah endorsed to Roland Johnson Real Estate & Investment Co. a check for $1,400 belonging to George Kattouah's cousin for whom he was purchasing the house. Roland Johnson then gave them the home improvement loan payment books and George Kattouah thereafter received a warranty deed for the Brush Street property.

In July 1967, Roland Johnson told Sarah Latta that the house was sold, she understanding that

she and her husband no longer owned the house
and that the home improvement loans had been
taken out of their names. At trial Benjamin Latta
and Sarah Latta identified their signatures on a
purchase agreement between Roland Johnson Real
Estate & Investment Co. and Benjamin and Sarah
Latta and a warranty deed from Benjamin and
Sarah Latta to Roland Johnson Real Estate &
Investment Co. covering the subject premises.

Mr. Kattouah testified that if he had known at
the inception of the agreement to purchase that the
home improvement loans balance was more than
$9,900 he would not have purchased the property
for his cousin. George Kattouah testified that he
relied upon the representations of defendant as to
the amount of the three home improvement loans
to his detriment.

Defendant claims that Mr. Kattouah did not rely
upon defendant's representations to his detriment,
and that "detriment" must be defined as economic
loss, that complainant Kattouah only assumed the
payment of the three home improvement loans to
the amount of $5,500. Further, that the home im-
provement loans were not liens upon the property.

There is no question but what there is ample
evidence for the determiner of the facts to conclude
that a false representation was made by defendant
knowingly with intent to defraud complainant by
stating that the three home improvement loans were
in a total amount of $5,500 when, in fact, they were
in a total sum of over $9,000. The agreement to pay
these loans was definite and specifically mentioned
the three loan account numbers at the banks. The
agreement was not a limited agreement to pay up
to $5,500, but an agreement to pay the three home
improvement loans specified.

The essential elements of the offense under the statute are (1) an intent to defraud; (2) the use of false pretenses or representations regarding an existing fact; and (3) the accomplishment of the intended fraud by means of such false pretenses. 3 Gillespie, Michigan Criminal Law and Procedure (2d ed), § 1432, p 1821; *People* v. *Wakely* (1886), 62 Mich 297; and *People* v. *Segal* (1914), 180 Mich 316.

Defendant cites *People* v. *Larco* (1951), 331 Mich 420 in support of his position that the complaining witness did not rely upon the representations of the defendant to his detriment, *i.e.,* that he suffered a loss. At p 429 it is stated in part:

"To support a conviction of obtaining money under false pretenses it was incumbent on the people to establish by competent evidence and beyond a reasonable doubt that some one or more of the representations set forth in the information was or were made with reference to an existing fact or facts, that such representation or representations was or were false and made with knowledge of its or their falsity, with intent to deceive, and that the person sought to be deceived relied thereon to his detriment. * * * "

In *Larco* defendant was charged with obtaining $300 by the false pretense that he could expedite the transfer of a liquor license to a Mr. Hondzinski. The complainant paid over the money because he feared that unless the money was paid to defendant delay would occur. The Court held that the crime of false pretenses had been proved. The Court stated the definition of the crime and added that "the person sought to be deceived relied thereon [reliance upon defendant's false representations] to his detriment". (331 Mich 429.)

*People* v. *Lintz* (1930), 251 Mich 367 controls the instant case. In *Lintz* defendant fraudulently represented to one Loveland that a farm was encumbered by a mortgage which Loveland had to pay off. There was in fact no such mortgage, and defendant kept the money Loveland gave him. On appeal, defendant argued that Loveland was not defrauded because he had agreed to pay an additional $565 on the trade. The Court rejected this theory and stated the following:

"Defendants' principal point, urged to obtain a discharge as well as reversal, is that, assuming the false representations proved, the offense was not made out because Loveland was not defrauded. The argument is that, as he was willing and had agreed to pay the additional $565 on the trade and he received all he had agreed to take, without being called upon to pay any greater sum, he lost nothing, even though defendants appropriated the money to themselves. It seems no less than a truism that one may be as well defrauded by being tricked into paying money to a person to whom or purpose to which he has not agreed *as by being led to pay more money than he has agreed. The criminal character of the act is determined by the means used in obtaining the money. People* v. *Lennox* [1895], 106 Mich 625." (251 Mich 369.)   (Emphasis supplied.)

This principle of law was reiterated in *People* v. *Guise* (1933), 262 Mich 72, where the Court pointed out that once the fraudulent purpose is accomplished the crime is complete. "The criminal character of the act is determined by the means used in obtaining the check."

We see no contradiction between *Larco, supra,* and the *Lintz* and *Guise* cases, *supra.* The wrong which is punishable is the means used in obtaining money. If one gives up money and assumes obliga-

tions based on false representations made by a party, detriment seems self-evident. In the case at bar, complainant paid out $1,500 and agreed to perform certain obligations which he would not have assumed in the absence of the false representations. Reliance and resulting detriment were adequately proved. The fact that Mr. Kattouah had experience in the real estate field does not insulate defendant from prosecution, for the relevant consideration in the criminal law was whether there was in fact reliance. *People* v. *Pray* (1870), 1 NP 69; and *People* v. *Bird* (1901), 126 Mich 631.

Defendant also raises the question: whether the trial court erred in sentencing the accused to probation in the absence of testimony that Roland Johnson Real Estate & Investment Co. was not a duly authorized and existing corporation to buy and sell real property and that Roland Johnson was not its duly authorized officer in connection with the alleged offense?

The above stated issue is rather perplexing. Defendant may be arguing that he is insulated from criminal punishment on the ground that the true party which dealt with complainant was the Roland Johnson Realty & Investment Co. and not Roland Johnson acting as an individual.

This argument seems worthy of little discussion. There is clear evidence that Roland Johnson himself obtained money under false pretenses. It is well established that corporate officers may be criminally liable for their own acts although performed in their official capacity as such officers. See 3 Fletcher, Cyclopedia of the Law of Private Corporations (Perm Ed), § 1348, p 1220. The "corporate veil" is useless to defendant in the instant case since it has been proved that he perpetrated the

fraud. See also *People* v. *The Detroit White Lead Works* (1890), 82 Mich 471.

Affirmed.

R. B. BURNS, P. J., concurred.

V. J. BRENNAN, J. (*dissenting*). Defendant Roland Johnson was tried before the court sitting without a jury and convicted of obtaining money from one George Kattouah under false pretenses. MCLA § 750.218 (Stat Ann 1962 Rev § 28.415). I reverse for a failure of proof of one of the elements of the crime.

On July 1, 1965, Benjamin and Sarah Latta engaged the defendant, a real estate agent doing business as the Roland Johnson Real Estate and Investment Co., to sell their home in Detroit, asking that the purchaser pay a fair price for their "equity" and assume both an $8,800 mortgage and $9,900 in unsecured home improvement loans. To facilitate the sale, the Lattas executed a deed to the defendant.* The defendant subsequently found a prospective purchaser, the complaining witness George Kattouah, and informed him of the $8,800 mortgage and the price asked for the "equity". However, he represented the indebtedness to be assumed on the home improvement loans as being "approximately $5,500", not the $9,900 actually due. Kattouah agreed in writing to purchase the house, paid $1,500 to the defendant and signed a writing in which he assumed a debt of "approximately $5,500" on the home improvement loans. The defendant in turn executed a warranty deed.

The statute defining the crime of obtaining money under false pretenses, MCLA § 750.218, has been

---

* Mrs. Latta testified at trial that she neither read the papers put before her by the defendant nor understood the nature of the transaction.

authoritatively construed to require that the person from whom the money is obtained suffer a detriment as a result of the misrepresentation. In *People* v. *Larco* (1951), 331 Mich 420, 429, the Supreme Court said:

"To support a conviction of obtaining money under false pretenses it was incumbent on the people to establish by competent evidence and beyond a reasonable doubt that some one or more of the representations set forth in the information was or were made with reference to an existing fact or facts, that such representation or representations was or were false and made with knowledge of its or their falsity, with intent to deceive, and that the person sought to be deceived relied thereon *to his detriment*". (Emphasis supplied.)

The prosecution in the instant case did not, however, offer proof of this element. Indeed, it appears, as the defendant has contended all along, that no detriment was in fact suffered by the complainant, Kattouah. While it is true that a misrepresentation of the amount of a debt secured by a lien on the property will sustain a conviction under the statute, *People* v. *Lee* (1932), 259 Mich 355; *People* v. *Etzler* (1940), 292 Mich 489, the debt on the home improvement loans here was not secured, and therefore the house is not subject to foreclosure for that part of the debt Kattouah did not assume, or, for that matter, the part Kattouah did assume. And, as far as we know, Kattouah's title is unaffected by the misrepresentation, while Kattouah himself is exposed to no greater liability than that which he assumed.

To conclude, there is nothing on the record showing that the complainant received anything less than what he bargained for. In the absence of such a

showing, the conviction should not stand. *People* v. *Smith* (1932), 260 Mich 486.

A new trial should not be ordered, since it does not appear that the failure of proof was due to inadvertence to which no objection or motion was made. *People* v. *Baker* (1969), 19 Mich App 480.

I would reverse.