PEOPLE v McCOY

1. APPEAL AND ERROR—CRIMINAL LAW—CIRCUIT COURTS—DISTRICT COURTS—FINAL JUDGMENTS—DISMISSAL OF CHARGES.

The people have an appeal as of right to a circuit court from the final judgment of a district court at the conclusion of a preliminary examination wherein the examining magistrate orders that all charges be dismissed and the defendant discharged.

2. APPEAL AND ERROR—CIRCUIT COURTS—DISTRICT COURTS—FINDINGS OF FACT—FINDINGS OF LAW.

The findings of fact by a district court judge, when supported by competent evidence, must be accepted on appeal by a circuit court, but the circuit court judge may review the rulings of the district judge as to the law.

3. APPEAL AND ERROR—CRIMINAL LAW—DISTRICT COURTS—SUPERINTENDING CONTROL—PROSECUTORS—DISMISSAL OF CHARGES.

Certain case precedent is contrary to prevailing law in this state insofar as it purports to hold that the exclusive and only way a prosecutor may appeal a district judge's dismissal of a case after the preliminary examination is by a civil suit for superintending control against the district judge.

4. APPEAL AND ERROR—CRIMINAL LAW—CIRCUIT COURTS—DISTRICT COURTS—PROSECUTORS—JEOPARDY—DISMISSAL OF CHARGES.

A prosecutor is entitled to appeal to a circuit court to review a district judge's ruling which dismisses a case after a preliminary examination, where jeopardy has not attached.

5. CONSPIRACY—FALSE PRETENSES—SUBSTANTIVE CRIMES—STATUTES.

It is necessary that co-conspirators be guilty of the substantive

REFERENCES FOR POINTS IN HEADNOTES

[1–4] 20 Am Jur 2d, Courts §§ 111–117.

Superintending control over inferior tribunals. 112 ALR 1351.

[5] 16 Am Jur 2d, Conspiracy §§ 7–11.

[6] 32 Am Jur 2d, False Pretenses § 12 *et seq.*

[7] 32 Am Jur 2d, False Pretenses § 33.

[8] 32 Am Jur 2d, False Pretenses §§ 33, 70, 72.

[9] 32 Am Jur 2d, False Pretenses § 38.

crime of obtaining money by false pretenses if the object of the conspiracy is fully carried out, in order for them to be convicted of the crime of conspiracy to obtain money over $100 by false pretenses (MCLA 750.157a, 750.218; MSA 28.354[1], 28.415).

6. FALSE PRETENSES—ELEMENTS—CRIMINAL LAW—STATUTES.

The essential elements of the offense of obtaining money over $100 by false pretenses are (1) an intent to defraud; (2) the use of false pretenses or representations regarding an existing fact; and (3) the accomplishment of the intended fraud by means of such false pretenses (MCLA 750.218; MSA 28.415).

7. FALSE PRETENSES—INTENT TO DEFRAUD—STATUTES.

"Intent to defraud", an essential element of the offense of obtaining money by false pretenses, is not established as soon as any part of a transaction is revealed as being tainted by a falsehood; where an intent is made the gist of an offense, that intent must be shown by such evidence as, uncontradicted, will fairly authorize it to be presumed beyond a reasonable doubt (MCLA 750.218; MSA 28.415).

8. FALSE PRETENSES—FALSEHOODS—INFERENCES—INTENT TO DEFRAUD.

Any falsehood, in and of itself, does not as a matter of law support an inference of intent to defraud where a defendant is charged with the offense of obtaining money by false pretenses.

9. FALSE PRETENSES—GENERAL RULE—PECUNIARY LOSS.

Michigan follows the general rule that a pecuniary loss to the victim must be shown where a defendant is charged with the offense of obtaining money by false pretenses.

Appeal from Berrien, James E. Hoff, J. Submitted December 7, 1976, at Grand Rapids. (Docket No. 28552.) Decided April 19, 1977. Leave to appeal applied for.

Thomas W. McCoy and two others were charged in a three-count complaint with conspiracy to obtain money over $100 by false pretenses. The district court dismissed all three counts against defendant McCoy. The people appealed to the circuit court, which ordered the charges reinstated. Defendant McCoy appeals by leave granted.

Reversed, and the dismissal of the charges by the district court is affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Harold S. Sawyer,* Kent County Prosecuting Attorney, Special Prosecuting Attorney, and *Donald A. Johnston, III,* Assistant Kent County Prosecuting Attorney, Special Assistant Prosecuting Attorney, for the people.

*Spelman, Taglia, Meek & Lagoni,* for defendant.

Before: R. B. BURNS, P. J., and QUINN and BEASLEY, JJ.

BEASLEY, J. On June 9, 1975, defendant McCoy and two others were charged in a three-count complaint with conspiracy to obtain money over $100 by false pretenses, contrary to MCLA 750.157a; MSA 28.354(1) and MCLA 750.218; MSA 28.415. Following a two day preliminary examination, the district court dismissed all three counts against defendant McCoy, ruling in part that the evidence presented by the plaintiff failed to establish that the charged crime was committed by defendant McCoy. Plaintiff appealed this ruling to the circuit court, which on March 12, 1976, reversed the district court's ruling and ordered the charges against defendant McCoy reinstated. The circuit court predicated its decision upon the ground that the district judge had erroneously applied the law regarding conspiracy and false pretenses to the facts as they were found by the district judge at the preliminary examination. From this adverse decision, defendant McCoy sought leave to appeal in this Court. This case is now before us, leave having been granted on July 7, 1976.

The threshold issue relates to procedure and jurisdiction. Defendant-appellant asserts that the prosecution was not entitled to "appeal" the ruling of the district judge dismissing the charges, but was entitled only to test the ruling by a civil action for superintending control against the district judge. Defendant preserved this question by a motion to dismiss the prosecutor's appeal, which motion was denied by the circuit judge.

Defendant's claim rests upon *People v Polk,* 59 Mich App 191; 229 NW2d 374 (1975), and the cases cited therein and, particularly, upon *People v Flint Municipal Judge,* 383 Mich 429; 175 NW2d 750 (1970). In *Polk,* which was a per curiam opinion, this Court flatly stated:

"The proper and *exclusive* remedy for review by the people of a magistrate's determination to discharge an accused at the conclusion of a preliminary examination is by means of filing an original civil complaint for an order of superintending control, which must be filed in circuit court." (Emphasis added.) 59 Mich App 191, 192.

In *Flint Municipal Judge, supra,* the Supreme Court said:

"No argument is made here as to the proper office of superintending control as a means of reviewing the discretion of an examining magistrate. The order of superintending control embraces the functions of the former writ of mandamus. GCR 1963, 711.3(2).

"Superintending control, like mandamus, lies to require the magistrate to perform a function where the magistrate has a clear legal duty to act.

"The superintending court does not substitute its judgment or discretion for that of the magistrate; neither does it act directly in the premises. Rather it examines the record made before the magistrate to determine whether there was such an abuse of discre-

tion as would amount to a failure to perform a clear legal duty; and in such case, the superintending court orders the magistrate to perform his duty.

"The process is not, properly speaking, an appeal. It is rather a whole new lawsuit, with different parties and different purposes. *People v Yeotis [People v Flint Municipal Judge]* is not a criminal case, but is rather an original civil complaint designed to require the defendant municipal judge to perform a clear legal duty.

\* \* \*

"Original complaints for superintending control against municipal judges, district judges, and probate judges should be directed to the circuit courts." 383 Mich 429, 431–32.

Taken literally, the foregoing cases appear to support defendant's position that the *only* remedy of the prosecution was a writ of superintending control; that the prosecution lacked the right of direct appeal of the district judge's finding. If so, defendant is entitled to reversal of the circuit judge's order and affirmation of the district judge's dismissal of the proceeding.[1]

---

[1] Interchanging the two matters, as was apparently done here, is questionable because of the differences, both procedural and substantive, between a direct appeal of a judge's ruling and a civil writ of superintending control against the trial judge. Procedurally, the superintending control remedy makes the trial judge a party, namely, the defendant. Is he, the trial judge, to retain his own counsel, to prepare and sign his own pleadings and to appear and argue on his own behalf? Is there a kind of stigma or special responsibility that attaches to a trial judge where his ruling makes him a party defendant in a superintending control action in contrast to usual appellate procedure? As a practical matter, we note that a judge from whom an appeal is taken is not expected even to comment much less file an answer to defend his ruling. Additionally, in the superintending control proceedings, there is a question as to the role, if any, of the defendant who, after all, is the real party in interest. Does the defendant intervene, does he file an amicus curiae brief, or does he seek to represent the trial judge? Substantively, in *Flint Municipal Judge, supra,* a scope of appellate review is suggested that is different than that involved in the usual appeal:

"The superintending court \* \* \* examines the record made before the

In the within case, in March, 1976, the circuit judge filed a carefully prepared opinion concluding that the district judge drew an erroneous conclusion of law from the facts he found. In that opinion, the circuit judge did not come to grips with the procedural issue, merely stating that the matter came before him on appeal taken by the prosecutor. However, after defendant, on April 15, 1976, filed a motion under *Polk* to dismiss on the ground of an alleged lack of jurisdiction, on April 23, 1976, the circuit judge made a supplemental order, holding in part as follows:

"A. That the act of the examining magistrate * * * at the conclusion of the preliminary examination * * * in ordering that all charges be dismissed, the Defendants discharged and their bonds cancelled, was a final judgment of the District Court, appealable as of right by the People to the Berrien County Circuit Court in accordance with and by authority of MSA 27A.8342; MCLA 600.8342, GCR 1963, 705, and *Jackson County Prosecutor v Court of Appeals,* 394 Mich 527 [; 232 NW2d 172] (1975);

"B. That the standard for review in the circuit court of a magistrate's determination to discharge an accused at the conclusion of a preliminary examination is identical irrespective of whether such review is sought by means of an appeal of right by the people or through the filing by the people of an original civil complaint in circuit court for an order of superintending control, and the parties, through their Attorneys of record, did in fact properly address themselves to the issues and scope of the proper standard in their Briefs and arguments

---

magistrate to determine whether there was such an abuse of discretion as would amount to a failure to perform a clear legal duty." *People v Flint Municipal Judge, supra,* at 432.

Delineation of these differences indicates the obvious; the use of superintending control to review and test dismissal of criminal proceedings by the magistrate is cumbersome and restrictive. Limiting a prosecutor to such a remedy comes close to denying any appeal at all. *See,* Miller, Appeals by the State in Criminal Cases, 36 Yale L J 486 (1927).

and the Court did, in fact, meet and abide by the proper standard in its written Opinion filed herein;"[2]

We agree with the result reached by the circuit court, even though we refrain from approving all that was said in arriving at that decision. Recent opinions of the Michigan Supreme Court demonstrate that this area of the law is far from settled. See, *e.g., People v Pummer,* 399 Mich 326; 249 NW2d 78 (1976), *Jackson County Prosecutor v Court of Appeals,* 394 Mich 527; 232 NW2d 172 (1975), *People v Blachura,* 390 Mich 326; 212 NW2d 182 (1973). However, this Court has declined to follow *Polk, supra,* the Court of Appeals decision relied upon by the defendant. *Oakland County Prosecutor v Forty-Sixth District Judge,* 72 Mich App 564; 250 NW2d 127 (1976). As is indicated by the title of that case, the people sought a writ of superintending control in order to review the granting by a district judge of a defendant's motion to dismiss based on entrapment. The circuit court granted the writ and the defendant appealed as of right to this Court. The opinion of this Court rejects both the procedure advocated by defendant herein and the case upon which he relies:

"Was superintending control the appropriate method for reviewing the action of the district judge? If it was, defendant is properly in this Court by claim of appeal.

---

[2] "Appeals shall be to the circuit court for the county in which the judgment is rendered. All appeals from final judgments shall be as of right and all other appeals shall be by application. All appeals to the court of appeals from judgments entered by the circuit court on appeals from the district court shall be by application." MCLA 600.8342; MSA 27A.8342. *But, see City of Birmingham v Oakland County,* 49 Mich App 299; 212 NW2d 51 (1973), which appears to hold that the Revised Judicature Act is inapplicable and that the code of criminal procedure controls.

If it was not, application for leave to appeal was required, MCLA 600.8342; MSA 27A.8342.

"The statute just cited provides for appeal from district court to circuit court. When that statute is considered with GCR 1963, 705, it is our opinion that the people had an appeal as of right from the district court's dismissal of this prosecution, and we so hold. We decline to follow *People v Polk,* 59 Mich App 191; 229 NW2d 374 (1975), because neither the statute nor the rule above cited was considered in that case.

* * *

"Since superintending control in circuit court was inappropriate, the application for leave to appeal to this Court should have been employed instead of claim of appeal, MCLA 600.8342, *supra.* However, in order to dispose of the case on the merits, we treat the claim of appeal as an application for leave to appeal and grant it." 72 Mich App at 565–567.[3]

In view of the applicable precedents and statutes we conclude in this case that:

1. The circuit judge was correct in believing that he must accept the district judge's findings of fact and that there was sufficient evidence to support such findings of fact.

---

[3] Not cited by the Court are the provisions regarding appeals to this Court; these include the following:

"The court of appeals has jurisdiction on appeals from: (1) All final judgments from the circuit courts, court of claims, and recorder's court, except judgments on ordinance violations in the traffic and ordinance division of recorder's court. Appeals from final judgments from all other courts and from convictions for ordinance violations in the traffic and ordinance division of recorder's court shall be taken to the circuit courts, upon which further review may be had only upon application for leave to appeal granted by the court of appeals. (2) Such other judgments or interlocutory orders as the supreme court may by rule determine." MCLA 600.308; MSA 27A.308.

"All appeals to the court of appeals from final judgments or decisions permitted by this act shall be a matter of right. All other appeals from other judgments or orders to the court of appeals permitted by statute or supreme court rule shall be by right or by leave as provided by the statute or the rules promulgated by the supreme court." MCLA 600.309; MSA 27A.309. *See also,* GCR 1963, 806.

2. The conclusion of the circuit judge that he could review the district judge's rulings as to the law was correct in the sense that it is the type of question which traditionally and statutorily may be appealed by a prosecutor and is not the type that a prosecutor is precluded from appealing.

3. Insofar as *Polk* purports to hold that the *exclusive* and *only* way a prosecutor may appeal a district judge's finding dismissing a case after preliminary examination is by a civil suit for superintending control against the district judge, *Polk* is contrary to prevailing law in this state.

4. Under these circumstances, the prosecution was entitled to appeal to the circuit court for review of the district judge's ruling, providing that jeopardy had not attached.

Assuming then that the prosecutor may appeal, the central issue is whether the circuit court correctly ruled that the district court abused its discretion in dismissing the charges against defendant McCoy. See *People v Carl Smith,* 39 Mich App 337; 197 NW2d 528 (1972), *People v Flint Municipal Judge, supra, People v Karcher,* 322 Mich 158; 33 NW2d 744 (1948), *People v Bommarito,* 33 Mich App 385; 190 NW2d 359 (1971). Resolution of this issue essentially involves the question of whether the facts as found by the district judge established, as a matter of law, that the charged crime had been committed by the defendant. In order to make this determination, it is necessary to set forth these facts in some detail.

The important parties in this case are as follows. The complainant was the Beaudoin-Stueland Electric Company, Inc., of St. Joseph, Michigan. At the time of the alleged conspiracy, codefendant Boreham was the president of this company. Defendant McCoy was an attorney at law practicing in St.

Joseph. Codefendant Lanphear was a close, personal friend of defendant McCoy. Lanphear was doing business under the name of Soo Surplus. The assumed name certificate for this business was prepared by McCoy and filed with the Chippewa County Clerk.

During the lifetime of the alleged conspiracy, three separate transactions, which were the basis of the three separate counts in the complaint, occurred. With respect to the first count, in late spring of 1974, Beaudoin-Stueland contracted to modify an electrical sub-station. The project called for delivery and installation of three outdoor oil circuit breakers (OCBs). At this time, Boreham told McCoy that he personally owned two OCBs which he desired to sell to Beaudoin-Stueland. McCoy advised Boreham that he would contact a friend regarding the transaction. McCoy then contacted Lanphear.

On June 4, 1974, prior to the filing of the Soo Surplus assumed name certificate, Beaudoin-Stueland issued its purchase order over the signature of Boreham to Soo Surplus for two OCBs at a price of $5,986 each. Both OCBs were installed in 1974 by Beaudoin-Stueland. The district court judge found, on the evidence presented, that the price charged for the two OCBs was fair and reasonable and that Beaudoin-Stueland resold them at a profit. As a result, for purposes of this appeal, the only falsehood involved in the transaction was the representation that the two OCBs in question were owned by Soo Surplus when, in fact, they were owned by Boreham. Further, all three defendants knew the facts of ownership, but none disclosed them to Beaudoin-Stueland.

As to count two, Soo Surplus purchased a quantity of mercury vapor light fixtures from an out-

side company with Boreham acting as intermediary. These fixtures were subsequently resold by Soo Surplus to Beaudoin-Stueland. Here again, the price charged Beaudoin-Stueland was fair and reasonable and Beaudoin-Stueland resold them at a profit. As was the case in count one, the only falsehood involved was Boreham's undisclosed participation in the transaction.

In count three, Beaudoin-Stueland paid $6400 to Soo Surplus for an OCB which it did not receive. However, the district court judge found that neither Lanphear nor McCoy had any knowledge whatsoever of the non-delivery, a finding with which the circuit court agreed.

Counts one and two set forth transactions in which a corporate officer, with the aid of two others, sells certain items to the corporation of which he is an officer, through a third entity, without ever disclosing his relationship to the third entity or his ownership of the goods. Assuming that the goods are of the kind of quality represented and the price for them is fair and reasonable, the question becomes, do the above circumstances support a charge of conspiracy to obtain money by false pretenses.

In order to be convicted of conspiracy to obtain money over $100 by false pretenses, it is, of course, necessary that if the object of the conspiracy is fully carried out, the co-conspirators be guilty of the substantive crime of obtaining money by false pretenses. If the essential elements of this offense are not present at that time, then the conspiracy would have had a different object and the wrong crime would have been charged. Thus, in analyzing whether the facts as found in the present case support the charged offense on counts one and two, it must be determined that the crime of obtaining money by false pretenses was committed.

The statute defining the crime of obtaining money by false pretenses provides in pertinent part (MCLA 750.218; MSA 28.415):

"Any person who, with intent to defraud or cheat, shall designedly * * * obtain from any person any money * * * if such * * * money * * * shall be of the value of more than $100.00, such person shall be guilty of a felony, punishable by imprisonment in the state prison not more than 10 years or by a fine of not more than $5,000.00."

Thus, as stated by this Court in *People v Johnson,* 28 Mich App 10, 16; 183 NW2d 813 (1970), the elemental prerequisites of the offense are as follows:

"The essential elements of the offense under the statute are (1) *an intent to defraud;* (2) the use of false pretenses or representations regarding an existing fact; and (3) *the accomplishment of the intended fraud* by means of such false pretenses." (Emphasis added.)

See also, *People v Larco,* 331 Mich 420; 49 NW2d 358 (1951), *People v Segal,* 180 Mich 316; 146 NW 644 (1914), *People v Wakely,* 62 Mich 297; 28 NW 871 (1886), *People v Cheff,* 37 Mich App 1; 194 NW2d 401 (1971), and *People v Sharpe,* 22 Mich App 454; 178 NW2d 90 (1970).

Clearly, "intent to defraud" is an essential element of the offense of obtaining money by false pretenses. See MCLA 750.218; MSA 28.415, *People v Larco, supra, People v Johnson, supra,* and *People v Sharpe, supra.* In determining that such an element was present under the facts presented, the circuit court judge seemed to believe that it was established as soon as any part of the transaction was revealed as being tainted by a falsehood. This

is not the law. As stated by our Supreme Court in *People v Getchell,* 6 Mich 496, 504–505 (1859), the rule is:

"The object of the defense in this case, in offering the rejected evidence, was to show that there was no intent to cheat or defraud—the untruth of the pretense being admitted. A falsehood does not necessarily imply an intent to defraud, for it may be uttered to secure a right, and, however much and severely it may be reprobated in ethics, the law does not assume to punish moral delinquencies as such. To defraud is to deprive another of a right, or property or of money, and this may be accomplished by falsehood, by withholding the right or property, or by force. In the present case, the prosecutor insists that he was defrauded because he was induced to indorse a note by the false representation of the defendant that a prior note for the same amount, indorsed by him, was defective, and had been destroyed; that he was thereby induced to lend his name for double the amount he otherwise would. The simple fact of procuring, by falsehood, the indorsement, was not an offense within the statute; it must have been procured with the intent to defraud, and where an intent is made the gist of an offense, that intent must be shown by such evidence as, uncontradicted, will fairly authorize it to be presumed beyond a reasonable doubt. It is true that a man is presumed to intend the natural consequences of his acts, but, under this statute, it is not the consequence, but the intention, which fixes the crime. There are no *natural* consequences, strictly speaking, to this act. It is itself an indifferent act, as the consequences will depend upon what he does with the paper, and this will depend upon his will—in other words, his intent. It was, therefore, necessary for the prosecutor to show something more than the application, the falsehood, and the indorsement, before he could ask a conviction; he should have shown those facts which, in the absence of all other proof, would warrant the jury in finding an intent to defraud, unless such intent is fairly to be inferred from the circumstances attending the act itself." (Emphasis in original.)

Thus, the fairness of the transactions may well constitute an important factor in determining whether or not an intent to defraud existed. In the present case, given the fairness of the transactions in the commercial setting between Soo Surplus as agent for Boreham, the undisclosed principal, and Beaudoin-Stueland, and absent any indication that the goods invoiced and sold were not of the kind, quality and character represented, the district court's finding that the intent to defraud was not shown was not an abuse of discretion. Accordingly, it was error to conclude that any falsehood, in and of itself, as a matter of law, would support an inference of intent to defraud.

.  "Fraud accomplished" is also an element of the substantive offense of obtaining money by false pretenses which must be established by competent evidence. As stated by the author in 2 Wharton's Criminal Law & Procedure, § 602, p 360:

"To constitute the offense of obtaining property by false pretenses it is necessary to show that the actions of the victim in reliance on the defendant's misrepresentations have caused the victim loss or that the victim has been prejudiced in some way."

To conclude that Michigan is a jurisdiction which follows the general rule that pecuniary loss to the victim must be shown, one need only consider the case of *People v Larco, supra,* wherein the Court stated:

"To support a conviction of obtaining money under false pretenses it is incumbent on the people to establish by competent evidence and beyond a reasonable doubt * * * that the person sought to be deceived relied thereon *to his detriment."* 331 Mich 420, 429 (Emphasis added.)

See also, *People v Pickett,* 15 Mich App 1; 166 NW2d

24 (1968). The Proposed Michigan Criminal Jury Instructions also support this view.

Under the facts presented at the preliminary examination, the district court judge could properly conclude that Beaudoin-Stueland did not suffer a loss by reason of the fact that it purchased two OCBs and 380 mercury vapor light fixtures from Soo Surplus notwithstanding the fact that defendant Boreham may have personally benefitted thereby as well. If the price was fair and the goods were as represented, the corporation suffers no loss and has not been prejudiced in spite of the falsehood. Under such circumstances, the falsehood cannot be said to be material to the transactions. Thus, holding that such a falsehood, in the absence of loss, was sufficient to impose criminal liability on the defendants, is contrary to the Michigan rule. Consequently, the district court did not abuse its discretion in this regard by not binding the defendant over for trial.

In view of the foregoing, we can summarily dispose of count three of the complaint. Since we have ruled that the district court did not abuse its discretion in not finding the charged conspiracy under counts one and two, Boreham's actions under count three cannot be said to be part of the same conspiracy, as the circuit judge found. In fact, even if counts one and two were part of the charged conspiracy, the actions of Boreham in count three could be held to be outside the conspiracy. Thus, the district court's finding that defendant McCoy's lack of knowledge precluded liability on count three was not an abuse of discretion under the facts as found in the present case.

Having found that the district judge did not abuse his discretion in dismissing all three counts

against this defendant, we conclude that it was error to order the charges reinstated and this defendant bound over for trial. In so finding, we in no way condone what appears to have been improper and unethical conduct on the part of defendant in his capacity as a member of the legal profession. To find that on this record the district court was correct in dismissing the offense charged against defendant is no vindication of defendant.

The finding of the circuit court in reinstating the charges against defendant, Thomas W. McCoy, and in binding him over for trial is reversed and the dismissal of the charges against him by the district court is affirmed.