PEOPLE v TAURIANEN

Docket No. 45140. Submitted August 19, 1980, at Detroit.—Decided
    November 21, 1980.

   Defendants Charles W. Taurianen, John W. Paluzzi, Jr., and
      Demetrios Hatsios were charged in Detroit Recorder's Court
      with one count of conspiracy to obtain money by false pretenses
      and three counts of obtaining money by false pretenses. Defen-
      dants Paluzzi and Hatsios were managers of an automobile
      repair shop and defendant Taurianen was a senior claims
      adjustor for the Automobile Association of America (AAA). The
      conspiracy charge centers around an alleged arrangement
      whereby defendant Taurianen would prepare fraudulent repair
      estimates for damaged cars insured by AAA. He would issue
      and sign checks on behalf of AAA to pay for the repairs and
      defendants Paluzzi and Hatsios would receive the checks, en-
      dorse them and deposit them in the bank. The three counts of
      obtaining money by false pretenses involved three separate
      incidents of the defendants' alleged criminal activity. At the
      preliminary examination, the court, Robert P. Van Wiem-
      eersch, J., bound all three defendants over for trial on all
      charges. Subsequently, on pretrial motion by the defendants to
      quash the information, the court, Donald L. Hobson, J., over
      objection of the prosecutor, ordered that the conspiracy charge
      against all three of the defendants be quashed, that one count          ·
      of obtaining money by false pretenses be quashed as to defen-
      dant Hatsios and that another count of obtaining money by
      false pretenses be quashed as to defendant Paluzzi, and that all

REFERENCES FOR POINTS IN HEADNOTES
[1] 21 Am Jur 2d, Criminal Law § 450.
[2] 5 Am Jur 2d, Appeal and Error § 772.
[3] 5 Am Jur 2d, Appeal and Error § 774.
[4] 32 Am Jur 2d, False Pretenses § 12 *et seq.*
[5] 32 Am Jur 2d, False Pretenses § 12.
[6] 32 Am Jur 2d, False Pretenses § 15.
[7] 32 Am Jur 2d, False Pretenses § 17.
[8] 16 Am Jur 2d (Rev), Conspiracy § 2.
[9, 11] 16 Am Jur 2d (Rev), Conspiracy §§ 10-15, 40 *et seq.*
[10] 16 Am Jur 2d (Rev), Conspiracy § 42.

three defendants stand trial on the remaining charges. Pleas of nolo contendere were then accepted by the court, Donald L. Hobson, J., over objection by the prosecutor. The people appeal from the granting of the motion to quash. *Held:*

1. The trial court's finding that the examining magistrate abused his discretion in binding the defendants over on the conspiracy charge was clearly erroneous. The acts of the defendants and the circumstances of the case establish an unlawful agreement and there was sufficient evidence presented for the magistrate to bind all the defendants over on the charge of conspiracy.

2. The trial court did not err in quashing the information as to defendant Paluzzi on Count III and as to defendant Hatsios on Count IV. In both cases there was insufficient evidence presented at the preliminary examination to bind over the respective defendants on the substantive crimes charged.

Reversed and remanded.

1. CRIMINAL LAW — PRETRIAL PROCEDURES — MAGISTRATES — PRE-
LIMINARY EXAMINATIONS — PROBABLE CAUSE — STATUTES.

The magistrate, at a preliminary examination, must bind a defendant over for trial if it appears that a felony has been committed and that there *is* probable cause to believe that the defendant committed it (MCL 766.13; MSA 28.931).

2. CRIMINAL LAW — PRELIMINARY EXAMINATIONS — APPEAL — STAN-
DARD OF REVIEW.

The standard for reviewing a magistrate's determination at a preliminary examination is that the reviewing court should not disturb the determination of the magistrate unless a clear abuse of discretion is demonstrated.

3. CRIMINAL LAW — MAGISTRATES — ABUSE OF DISCRETION — REVIEW.

A reviewing judge, in order to determine whether a magistrate abused his discretion, considers the entire record made at the preliminary examination by reviewing the evidence that was presented to the magistrate at the examination.

4. FALSE PRETENSES — ELEMENTS OF CRIME — STATUTES.

The essential elements of the offense of obtaining money by false pretenses are 1) an intent to defraud; 2) the use of false pretenses or representations regarding an existing fact; and 3) the accomplishment of the intended fraud by means of such false pretenses (MCL 750.218; MSA 28.415).

5. FALSE PRETENSES — FRAUDULENT MISREPRESENTATION OF FACT.

One of the necessary elements of the crime of obtaining money by false pretenses is that the defendant must make a fraudulent misrepresentation of fact.

6. FALSE PRETENSES — FALSE OPINIONS — MISREPRESENTATIONS OF FACT — STATUTES.

There is a distinction between false statements of opinion and false statements of fact in prosecutions for the crime of obtaining money by false pretenses; the Court of Appeals has held that overcharges for repair work are inflated opinions of value and fall into the category of false opinion, which is not subject to prosecution, while repair estimates which include charges for nonexistent work constitute a misrepresentation of fact rather than an overcharge, and, as such, may be subject to prosecution under the false pretenses statute (MCL 750.218; MSA 28.415).

7. FALSE PRETENSES — FAILURE TO SPEAK.

A false pretense can be the failure to speak when it is necessary to do so.

8. CONSPIRACY — PARTNERSHIP — CRIMINAL PURPOSE.

A conspiracy is a partnership for a criminal purpose.

9. CONSPIRACY — UNLAWFUL AGREEMENTS — PROOF.

The gist of the offense of conspiracy lies in the unlawful agreement between two or more persons and direct proof of agreement is not required, nor is it necessary that a formal agreement be proven; it is sufficient if the circumstances, acts and conduct of the parties establish an agreement in fact.

10. CONSPIRACY — CIRCUMSTANTIAL EVIDENCE — INFERENCES.

A conspiracy may be established by circumstantial evidence and may be based upon inference; however, the facts and circumstances must warrant at least a fair inference of the elements to be established in order to make a case of conspiracy.

11. CONSPIRACY — KNOWLEDGE OF PARTICIPANTS.

A person may be a party to a continuing conspiracy by knowingly cooperating to further the object thereof; it is not necessary to a conviction for conspiracy that each defendant have knowledge of all its ramifications, nor is it necessary that one conspirator should know all of the conspirators or participate in all of the objects of the conspiracy.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Edward Reilly Wilson,* Principal Attorney, Appeals, and *Don W. Atkins,* Assistant Prosecuting Attorney, for the people.

*Sommers, Schwartz, Silver & Schwartz, P.C.* (by *Lawrence Warren),* for defendant Taurianen.

*Ivan E. Barris,* for defendant Paluzzi.

*George V. Cartsos,* for defendant Hatsios.

Before: J. H. GILLIS, P.J., and N. J. KAUFMAN and R. M. MAHER, JJ.

PER CURIAM. The defendants, Charles W. Taurianen, John W. Paluzzi, Jr., and Demetrios Hatsios, were charged with one count of conspiracy to obtain money by false pretenses, MCL 750.157a; MSA 28.354(1) (Count I), and three counts of obtaining money by false pretenses, MCL 750.218; MSA 28.415 (Counts II, III, and IV). After a preliminary examination in Detroit Recorder's Court, the three defendants were bound over for trial on all charges. On April 16, 1979, pretrial motions were heard and, on April 27, 1979, the trial judge ordered Count I, conspiracy to obtain money by false pretenses, quashed as to all defendants. Defendant Taurianen was ordered to stand trial on Counts II, III, and IV; defendant Paluzzi was ordered to stand trial on Counts II and IV, and defendant Hatsios was ordered to stand trial on Counts II and III.

After entering the order on defendants' motion to quash, the trial judge accepted pleas of nolo contendere on the remaining counts. The prosecutor objected on the record. On May 5, 1979,

defendant Taurianen was sentenced to two years probation, a $1,500 fine and $100 in court costs. Defendants Paluzzi and Hatsios each received two years probation, $2,500 fines and $100 court costs. The people appeal as a matter of right pursuant to GCR 1963, 806.1.

The issue on appeal is whether the trial court erred in partially granting defendants' motion to quash the information. The people argue that there was sufficient evidence presented at the preliminary examination to justify the binding over of the defendants on all of the counts charged.

In order to understand the issue being raised in this appeal, a recitation of the facts in this case is necessary.

All of the defendants were charged with obtaining money by false pretenses from Sharon Walker, whose married name was Sharon Jackson. It was by the name Jackson that she was known by the insuring subsidiary of the Automobile Association of America by which she was insured (hereinafter AAA), and that was the name she used, followed by the name "Walker" in parentheses in her signature. Ms. Jackson damaged her automobile in an accident on March 4, 1976. She reported the accident to her insurance company, AAA, and brought her car to New Center Collision, a Michigan corporation, for repairs. While at New Center Collision, she spoke to defendant Paluzzi, who, with defendant Hatsios, managed the corporation. She stated that she received neither an estimate nor a list of damages. Jackson left her car at New Center Collision and paid the $100 deductible required by her insurance policy.

Defendant Charles Taurianen, a senior claims adjustor for AAA, signed an AAA damage esti-

mate on Jackson's car and drew a check payable to Sharon Jackson and New Center Collision on behalf of AAA. This check was endorsed by both defendant Hatsios and defendant Paluzzi. Although the check was endorsed by Sharon Jackson, Ms. Jackson testified that she did not sign the check, and that, if she had, she would have included "Walker" after her married name.

AAA claims examiner Donald Marble testified that he inspected Jackson's automobile and stated that, although the front bumper, horizontal pad, and reinforcement appeared on the estimate as being damaged, he found no evidence of damage to them. Additionally, Mr. Marble testified that numerous other repairs called for in the estimate had either not been made in the manner specified or had not been done at all. Mr. Marble testified that an overcharge of $1,298 had been made on the $1,819 estimate given by defendant Taurianen.

The trial court, in its opinion quashing certain counts in the information, determined that Count II, obtaining money by false pretenses, pertained to the Jackson transaction. The trial court stated that, since both defendant Hatsios and defendant Paluzzi endorsed the check at a time when it must have contained the false signature of Ms. Jackson, both would be bound over on Count II.

All the defendants were charged with obtaining money by false pretenses from Delores Bullock. Bullock testified that she damaged the left side of her car in May of 1978. After reporting the accident to her insurance company, she took the car to New Center Collision. She stated that, although she received no estimate, she paid the $100 deductible required by her insurance policy. Her car was at New Center Collision for one week. Defendant Charles Taurianen prepared the estimate on Bul-

lock's car. A Mr. Hopp authorized a check payable to Delores Bullock and New Center Collision based on the Taurianen estimate. The check was endorsed by defendant Hatsios and by Delores Bullock and was deposited in New Center Collision's bank account. Bullock testified that she never authorized anyone to sign her name on the check and that the signature was not hers. AAA material damage specialist Walter Trembal reinspected Bullock's automobile, finding that the estimate prepared by defendant Taurianen required replacement of many parts which were never damaged and did not need replacing. These items included: the rear bumper, rear bumper reinforcement, rear bumper left isolator, left door panel, left door remote control mirror, left door glass, left front fender, lower left front fender extensions, front bumper cover, left taillight housing, lens and applique. Trembal made two inspections: the first indicated that there was an overcharge of $1,107 and the second indicated an overcharge of $1,405. Trembal stated that he had made the second inspection because the original inspection had been made in the dark in an automobile garage. The second inspection was made after it was determined that AAA would depose the insured, Ms. Bullock. It was Mr. Trembal's opinion at the preliminary examination that the estimate made by defendant Taurianen was "terribly, terribly inflated". The trial court determined that Count III of the information referred to the Bullock transaction. The trial court stated that, since defendant Paluzzi did not endorse the check at the time that it contained the false signature of Ms. Bullock, the defendant should be dropped from Count III.

All the defendants were charged with obtaining money by false pretenses from Dorothy Roque-

more. At the preliminary examination, Roquemore testified that in January of 1978 she was involved in an automobile accident. She stated that her car received damage to the left front fender, driver's side door and the rear left quarter panel. The right side of the car had a scratch on it from a previous accident. Ms. Roquemore did not report the accident to AAA, her insurer, until after she received an estimate from New Center Collision. Roquemore stated that she went to New Center Collision because it had a reputation for giving a loan. Ms. Roquemore stated that, at a later visit to New Center, she spoke with one of the owners of the shop, defendant Paluzzi. Roquemore testified that she decided to report the accident to AAA after Paluzzi told her that even if she didn't report the accident to her insurance company, her insurance would still go up. Roquemore left her car at New Center Collision for ten days. When she picked it up, it was not completely repaired. The striping had not been put back on the side of the car; the paint job was not right and there was debris in the trunk. She took her car to two other repair shops, but neither shop repaired her car.

Roquemore received a written estimate which was signed by Charles Taurianen. She testified that she never paid the $50 deductible required by her insurance policy to New Center Collision. A check payable to Dorothy Roquemore and New Center Collision was drawn by Charles Taurianen on behalf of AAA. The check was endorsed by the defendant Paluzzi on behalf of New Center Collision and deposited in the corporate bank account. The check was also endorsed with the name of Dorothy Roquemore, but she stated that she never endorsed the check.

Walter Quick, an AAA claims examiner, rein-

spected Roquemore's automobile. Mr. Quick testified that the estimate called for replacement of a front bumper with a rechromed bumper, which was not performed. The left front fender and reinforcement were not replaced as called for by the estimate. Mr. Quick testified that the left front fender had been repaired. In Mr. Quick's opinion, the wheelhouse panel did not appear to have been repaired. Mr. Quick testified that the estimate called for a new door, but he could not find evidence that the door on the car had been removed. The left quarter-panel was not replaced but was only repaired. In the opinion of Mr. Quick, the work to be done on the right rear quarter-panel was not performed. Mr. Quick testified that, based on his inspection of the car and the AAA estimate, he determined that there was an overcharge of $1,035.38. Mr. Quick testified that he thought the estimate was inflated. The trial court stated that Count IV applied to the Dorothy Roquemore transaction. The trial court held that, since the check was not endorsed by defendant Hatsios at a time when the check bore the false signature of Dorothy Roquemore, defendant Hatsios should be dropped from Count IV.

Stanley Bouchard, manager of the AAA drive-in claim center in Berkley, Michigan, testified as to how the drive-in claim center operated. He stated that after an adjustor wrote an estimate, a check was issued and signed by someone authorized at the drive-in claim center to execute checks. The defendant, Charles Taurianen, was authorized to sign and issue checks on behalf of AAA.

Employees from New Center Collision also testified that managers Paluzzi and Hatsios handled the office business, that the workers never saw written estimates, and that they often received verbal work orders from the owners.

The court took judicial notice of the Motor Vehicle Service and Repair Act, MCL 257.1301 *et seq.;* MSA 9.1720(1) *et seq.* A copy of that law was admitted into evidence.

As previously stated, the issue on appeal is whether the trial court erred in partially granting defendants' motion to quash the information. The people argue that there was sufficient evidence presented at the preliminary examination to justify binding defendants over on all of the counts charged and that the magistrate did not abuse his discretion in so doing.

The magistrate, at a preliminary examination, must bind a defendant over for trial if it appears that a felony has been committed and there is probable cause to believe that the defendant committed it. MCL 766.13; MSA 28.931. The standard for reviewing a magistrate's determination at the preliminary examination is that the reviewing court should not disturb the determination of the magistrate unless a clear abuse of discretion is demonstrated. *People v Doss,* 406 Mich 90, 101; 276 NW2d 9 (1979). In determining whether the magistrate abused his discretion, the reviewing judge considers the entire record made at the preliminary examination by reviewing the evidence that was presented to the magistrate at the examination. *Genesee Prosecutor v Genesee Circuit Judge,* 391 Mich 115; 215 NW2d 145 (1974).

The defendants were charged with three counts of false pretenses and one count of conspiracy. In Counts II, III, and IV, the defendants were charged with violating MCL 750.218; MSA 28.415, which states:

"Any person who, with intent to defraud or cheat, shall designedly, by color of any false token or writing or by any false or bogus check or other written, printed

or engraved instrument, by spurious coin or metal in the similitude of coin, or by any other false pretense, cause any person to grant, convey, assign, demise, lease or mortgage any land or interest in land, or obtain the signature of any person to any written instrument, the making whereof would be punishable as forgery, or obtain from any person any money or personal property or the use of any instrument, facility or article or other valuable thing or service, or by means of any false weights or measures obtain a larger amount or quantity of property than was bargained for, or by means of any false weights or measures sell or dispose of a less amount or quantity of property than was bargained for, if such land or interest in land, money, personal property, use of such instrument, facility or article, valuable thing, service, larger amount obtained or less amount disposed of, shall be of the value of $100.00 or less, shall be guilty of a misdemeanor; and if such land, interest in land, money, personal property, use of such instrument, facility or article, valuable thing, service, larger amount obtained or less amount disposed of shall be of the value of more than $100.00, such person shall be guilty of a felony, punishable by imprisonment in the state prison not more than 10 years or by a fine of not more than $5,000.00."

The essential elements of the offense of obtaining money by false pretenses are (1) an intent to defraud; (2) the use of false pretenses or representations regarding an existing fact; and (3) the accomplishment of the intended fraud by means of such false pretenses. *People v McCoy,* 75 Mich App 164, 175; 254 NW2d 829 (1977), *lv den* 401 Mich 853 (1977), *People v Johnson,* 28 Mich App 10, 16; 183 NW2d 813 (1970).

One of the necessary elements of the crime of obtaining money by false pretenses is that the defendant must make a fraudulent misrepresentation of fact. The prosecution claims that *People v Wilde,* 42 Mich App 514; 202 NW2d 542 (1972), is controlling in the instant case. In *Wilde, supra,*

this Court made a distinction between false statements of opinion and false statements of fact. This Court stated in *Wilde* that overcharges are inflated opinions of value and fall into the category of false opinion. See *People v Marks,* 12 Mich App 690; 163 NW2d 506 (1968). This Court in *Wilde, supra,* further stated that repair estimates, which included a charge for nonexistent work, constituted a misrepresentation of fact rather than an overcharge.

In *Wilde, supra,* the complainant took his car to defendant's bump shop for a repair estimate. While discussing the estimate, the complainant inquired into the cost of a paint job. The defendant, Wilde, suggested that the complainant go to an AAA agent, Pineau, because he would include the cost of the paint job in his estimate for the insurance claim. Prior to the complainant's car being taken to the defendant's shop for repairs, AAA had its regional manager make an estimate totalling $202.61. Complainant's car was taken to the defendant's shop, where AAA agent Pineau prepared a formal estimate which totalled $622.33. This Court, in *Wilde,* held that the disparity between the two estimates represented excessive charges pursuant to an agreement between defendant and Pineau in which Pineau would inflate the estimates in return for a kickback.

In the case at bar, fraudulent misrepresentations of fact were made because the estimate included charges for nonexistent work. However, it can be argued that, although a misrepresentation of fact was made, it was not made by defendant Paluzzi to Ms. Bullock, as charged in Count III, or by defendant Hatsios to Ms. Roquemore, as charged in Count IV, because the estimate was

written by defendant Taurianen. There was no evidence presented at the preliminary examination that these two defendants made statements to Ms. Bullock or Ms. Roquemore which were fraudulent misrepresentations of fact. There were special circumstances presented in the *Wilde* case which justified the defendants' being charged with obtaining money by the use of false pretenses. In *Wilde, supra,* the defendants knew about the estimate and recommended that a fraudulent estimate be procured. In the present case, the record does not indicate whether either of the defendants Paluzzi or Hatsios certified that the repairs listed on the estimates were made.

On the other hand, it can be argued that, by not replacing damaged parts with replacement parts and accepting payment for doing so, New Center Collision deliberately made a false statement by its acts. In *People v Etzler,* 292 Mich 489, 491; 290 NW 879 (1940), the Court held that a false pretense can be the failure to speak when it is necessary to do so. In *Etzler, supra,* where the defendant sold an automobile without revealing the fact that it was mortgaged, the Court held that the defendant was deliberately acting a falsehood and that such conduct was as objectionable as a spoken falsehood. Arguably, New Center Collision had the duty to inform AAA that it was receiving estimates for repairs with which there was noncompliance. Thus, defendants Hatsios and Paluzzi made tacit misrepresentations of fact by their actions and their failure to speak. The element of intent to defraud can be reasonably inferred from the following facts: New Center Collision received payment for repairs not performed, repair estimates were not given to the insured, defendants Paluzzi and Hatsios handled the office work of the com-

pany, and the checks were deposited in the company account.

The fact remains that Paluzzi, in Count III, and Hatsios, in Count IV, did not individually endorse a check which contained a nongenuine signature. There may be significance in the fact that one of the checks was endorsed by defendant Paluzzi (Count IV) and one by defendant Hatsios (Count III), that one was endorsed by both men (Count II) and that all the checks were placed in the company's bank account. From such facts, however, we do not believe it could be inferred that, even where the checks were not individually endorsed by defendants Paluzzi and Hatsios, there was an accomplishment of the intended fraud.

It is this Court's conclusion that there were not sufficient facts presented at the preliminary examination to justify a finding of probable cause to establish that the crime of obtaining money by false pretenses was committed by defendant Paluzzi in Count III or by defendant Hatsios in Count IV. Since each count charged on the information constituted a separate crime, it was not improper for the trial court to find that insufficient evidence had been presented to justify binding defendants Paluzzi and Hatsios over for trial on all three counts of obtaining money by false pretenses. As to the check that both defendants endorsed (Sharon Jackson's), the inference is reasonable that each was aware of the presence of the false endorsement at the time he endorsed the check and deposited the same in the corporate account. However, since defendant Paluzzi did not endorse the check in Count III, we find that no criminality was shown as to him in that instance and that the trial court was correct in dismissing Count III as to him. Likewise, because defendant Hatsios did

not endorse the check which contained the false signature of Ms. Roquemore and which forms the basis for Count IV, we find that no evidence of criminality was presented as to defendant Hatsios in that transaction and that the trial court did not err in dismissing Count IV as to him.

As to the trial court's dismissal of the conspiracy charged in Count I, it is necessary to examine the differences between the crime of conspiracy and the underlying substantive offenses to understand our conclusion regarding Count I.

A conspiracy is a partnership for a criminal purpose. The gist of the offense of conspiracy lies in the unlawful agreement between two or more persons. Direct proof of an agreement is not required, nor is it necessary that a formal agreement be proven. It is sufficient if the circumstances, acts, and conduct of the parties establish an agreement in fact. *People v Atley,* 392 Mich 298, 311; 220 NW2d 465 (1974). A conspiracy may be established by circumstantial evidence and may be based upon inference. However, the facts and circumstances must warrant at least a fair inference of the elements to be established in order to make a case of conspiracy. *People v McCracken,* 88 Mich App 286; 276 NW2d 609 (1979).

There was no direct evidence presented at the preliminary examination that there was an agreement between all three defendants to obtain money by false pretenses. The trial court stated that while one could speculate as to why the defendant Taurianen inflated the repair estimates which ultimately went to, and were paid by, his employer, AAA, it would be unfair to conclude that this was done pursuant to any agreement with the other defendants.

We hold that the trial court's finding of an

abuse of discretion by the examining magistrate in regard to this issue was clearly erroneous. The acts of the defendants and the circumstances of the case establish an agreement. Defendant Taurianen was writing up estimates containing charges for nonexistent repairs. The facts indicate that defendant Taurianen was making misrepresentations of fact per *People v Wilde, supra.* Defendants Paluzzi and Hatsios did the office work at New Center Collision and arguably knew that the repairs were not being performed, yet failed to inform AAA, the insurer who paid for the repairs. There was some evidence indicating that defendant Taurianen may have referred Dorothy Roquemore to New Center Collision. Some of the acts of defendants Paluzzi and Hatsios arguably paralleled the acts of defendant Taurianen. Other circumstances, such as not giving to the insured a copy of the estimate, the nongenuine check endorsements of the automobile owners' signatures, the estimates that were written by defendant Taurianen, and several of the checks which were issued by the defendant Taurianen, support an inference that there was an agreement between defendant Taurianen and defendants Hatsios and Paluzzi.

"A person may be a party to a continuing conspiracy by knowingly co-operating to further the object thereof. It is not necessary to a conviction for conspiracy that each defendant have knowledge of all its ramifications. Nor is it necessary that one conspirator should know all of the conspirators or participate in all of the objects of the conspiracy." *People v Cooper,* 326 Mich 514, 521; 40 NW2d 708 (1950). (Citations omitted.)

It is our conclusion that, when tested under the guidelines announced by this Court regarding

abuse of discretion, the trial court did not err in quashing the information as to defendant Paluzzi on Count III and as to defendant Hatsios on Count IV. In both of these cases there was insufficient evidence presented at the preliminary examination to bind over the respective defendants on the substantive crimes charged. On the other hand, we find that there was sufficient evidence presented for the magistrate to bind all defendants over on the charge of conspiracy in Count I of the information. We therefore hold that the determination of the trial court that the magistrate abused his discretion in binding all defendants over on the conspiracy charge was erroneous.

Reversed and remanded for trial on the charge of conspiracy.